**Nora GRIGSBY, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. A–16238.**

Court of Criminal Appeals of Oklahoma.

May 3, 1972.

Rehearing Denied May 22, 1972.

Robinson & Summers, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., H. L. McConnell, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge.

Appellant, Nora Grigsby, hereinafter referred to as defendant, was convicted in the District Court of Muskogee County, Case Number CRF 69–51, of first degree arson and sentenced to five (5) years imprisonment. Judgment and sentence was imposed on June 24, 1970, and this appeal perfected therefrom.

Specifically, it was charged that on February 17, 1969, the defendant did, by use of an explosive device and substance, cause an explosion which damaged a dwelling house located in Muskogee County at which time the dwelling was occupied by Faye Shaw. The evidence established that on February 17, 1969, a dynamite explosive device was detonated at the home of Faye Shaw, ripping a hole approximately one-foot in diameter in the foundation of the house and shattering window glass in the dwelling. The explosion, located just under the window of Miss Shaw's bedroom, awakened Miss Shaw who thereupon fled the house.

After the explosion Marion Smith, who lived across the street from Miss Shaw's home, ran out and observed a brown Ford Fairlane 500 driving past the scene. According to Miss Shaw, she had been harassed by threatening telephone calls by a person identifying herself as Nora Grigsby, the defendant. Three weeks prior to the explosion Miss Shaw had given an automobile license tag number to another neighbor, Mr. Cecil Maher. When the police arrived on the scene, Mr. Maher gave this license number to the officers. One of the officers testified that upon investigating the scene the man advised him "it was an Arkansas tag, a 1969 Arkansas." The officers at the scene radioed the li-

cense number and car description and indicated the car might be traveling south on Highway 64. Shortly thereafter Officer Bradley, at the scene of the explosion, was notified that the car had been stopped at Warner, a community south of Muskogee located on the route to Ft. Smith, Arkansas.

Officer Bullard, City Marshall of Warner, testified that he stopped the defendant's car as fitting the description radioed by the Muskogee Police Department, and held the defendant in custody until the Muskogee Officers arrived. Upon the arrival of the Muskogee Officers, Officer Bradley shined his flashlight into the defendant's car where he saw dynamite fuses lying in the front seat and on the floorboard of the car. Thereupon the defendant and her car were taken into custody by the Muskogee Officers.

Upon their arrival at the Muskogee Police Station, the defendant was read a notification of her rights which she signed. Subsequently, without interrogation, the defendant began crying and repeating that she had bombed the house because "they had done her so bad."

At the trial George Ainsworth testified that he was a dynamite dealer in Ft. Smith, Arkansas. He related that on February 15, 1969, a lady identifying herself as Dorothy White purchased six sticks of dynamite and caps from him. Ainsworth identified this purchaser as the defendant. A search, pursuant to a search warrant issued by Arkansas authorities, revealed three sticks of dynamite in the rear bedroom of the defendant's apartment in Ft. Smith, Arkansas.

The defendant testified that she was a nurse employed in a Ft. Smith, Arkansas hospital. She stated that she had known Fay Shaw since 1967, having met her at a nursing home where she had cared for a Mrs. Ethel Khilling, the mother of William Khilling. Both defendant and Miss Shaw had dated William Khilling. The defendant testified that on the evening of February 16, 1969, she had driven her car to Muskogee at the request of Gladys Sallee, so that Miss Sallee might have a date with a Bob Newman. Upon meeting Mr. Newman in Muskogee, the two women transferred Miss Sallee's luggage to Mr. Newman's car and the three then drove around town in Mr. Newman's car. Upon returning to her own car around 12:30 A.M. she noticed a soap powder box and a pair of boots in her car which she thought someone had put there by mistake. She did not remove the items, but proceeded home on Highway 64 towards Ft. Smith, where she was arrested near Warner, Oklahoma. The defendant expressly denied purchasing any dynamite, placing any dynamite in her own apartment, and denied planting any type of a bomb at Fay Shaw's house.

Two sisters of the defendant testified that the defendant had been physically ill, mentally disturbed, and emotionally upset.

█ It is defendant's first contention that it was error for the trial court to admit the dynamite fuses found in the defendant's car for the reason that the arrest was illegal, thereby rendering the car searched unlawful. Upon a review of the record we find that the trial court had before it competent evidence upon which to base its finding that the officers had probable cause to issue an arrest pickup for the defendant's vehicle. The fact that a brown Ford Fairlane had been seen at the scene, when coupled with Miss Shaw's difficulty with the defendant, and the previously determined license tag number for defendant's car, formed an adequate basis for the officers to issue a pickup for the vehicle.

█ It is fundamental that the "constitutional guaranty against unlawful search and seizure does not prevent seizure incident to a lawful arrest where the evidence is not concealed but in open view." Battles v. State, Okl.Cr., 459 P.2d 623, at 627 (1969). Even if there had not been probable cause to arrest the defendant, the car search was not dependent upon the arrest for its validity. It is clear from the officer's testimony that the dynamite fuses in defendant's car were in open view, not

requiring an intrusive search of the vehicle to be observed. Where such incriminating evidence is found in open view, the search and seizure need not be incident to a lawful arrest to justify the seizure. We therefore conclude that the search and seizure of the dynamite fuses in defendant's car was valid, and accordingly that they were properly admitted at defendant's trial.

■ It is defendant's second contention that the dynamite found in her apartment was inadmissible in evidence since the search was unlawful as it was conducted pursuant to an insufficient affidavit for search warrant under the requirements of Leonard v. State, Okl.Cr., 453 P.2d 257. The affidavit or application for search warrant presented to an Arkansas magistrate recited in part as follows:

"That he [affiant-officer] has reason to believe that on the premises known as 4128 Standard in the City of Fort Smith, County of Sebastian, State of Arkansas, occupied by Nora C. Grigsby, there is now being concealed certain property, namely five sticks of forty percent (40%) American· Cyanamide; 5 #6 blasting caps; ten feet blasting fuse which were purchased by Nora C. Grigsby and believed to have been partially used in dynamiting a residence in Muskogee, Oklahoma, on February 16, 1969, and that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: Nora C. Grigsby is under arrest in Muskogee, Oklahoma, for arson and she purchased above listed items at Dupree Distributing Company, Route 3, Box 171, Fort Smith, on Saturday, February 15, 1969, and part of the items were believed to have been used in dynamiting residence in Muskogee, Oklahoma."

We are of the opinion that the affidavit in support of the search warrant stated sufficient detailed facts to enable a magistrate to determine that there was probable cause to issue a search warrant. Defendant stresses that portion of the Leonard

decision, stating that the affidavit for search warrant should state that the affiant-officer "has personally observed a violation of the law or the possession of contraband upon certain described premises." In the instant case the affiant-officers had indeed personally observed a violation of law, namely the arson committed at the home of Fay Shaw. In addition the affiant-officers had learned that the defendant had purchased some dynamite. These facts provided the probable cause to search defendant's apartment. The affidavit did not rely on hearsay or rumor.

Furthermore, it should be remembered that the requirements of Leonard v. State, supra, which set forth the rule of the United States Supreme Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, are primarily concerned with situations where a search warrant is sought pursuant to nothing more than undisclosed informant's tip. The affidavit for search warrant in the instant case was not based on the tip of an undisclosed informant, but rather on specified factual considerations which, in our view, constituted probable cause to issue the search warrant.

■ It is defendant's third contention that the trial court erred in admitting a confession by the defendant since there was no affirmative waiver by defendant of her right to remain silent. After defendant was taken into custody at the police station, a "notification of rights" was read to her, signed by the defendant, and witnessed by two officers. The signed notification of rights was admitted into the record and fully states the rights spelled out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Shortly after signing the notification of rights, defendant began crying and said "you would have done the same thing if they had treated you like that." She continued crying and repeated, "they did me so bad, they did me so bad. You just don't know how they treated me. You don't know how bad they treated me."

■ It is these remarks which defendant contends constituted an inadmissible confession. Defendant did not give a full statement incriminating herself to the police, nor did she sign any type of confession. Defendant argues that these incriminating remarks were inadmissible because the defendant did not sign a specific waiver of rights. The Miranda decision does not require that there be a signed instrument entitled "waiver of rights." Of course, such an instrument signed and witnessed would be highly pursuasive that an accused had waived his rights. But a waiver of rights, voluntarily and intelligently made by an accused, can be determined by other facts.

■ When an accused has been fully advised of his constitutional rights, especially his right to presence of counsel during an interrogation, and that an attorney will be provided if he is indigent, and where it appears that the accused understands his rights, it may be assumed that any incriminating statements made thereafter constitutes a waiver. The court in Miranda held:

"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence . . . There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

\*　　\*　　\*　　\*　　\*　　\*

"But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. 478–479, 86 S.Ct. 1630.

We are of the opinion that the prosecution at the trial demonstrated that the accused was fully given the warnings required by law and that she waived her rights, and thereafter made incriminating remarks which were admissible in evidence.

■ It is defendant's fourth contention that the court erred in permitting an in-court identification of the defendant by the dynamite salesman, George Ainsworth, "without the defendant having been afforded a lawful lineup." Defendant argues that "no lineup was ever held nor were any pictures shown the witness." There was a non-jury hearing held at which time Mr. Ainsworth was examined regarding any pretrial identification of the defendant. This witness testified that aside from when he made the sale of dynamite to the defendant, his only viewing of the defendant before trial was when he arrived at the courtroom for the preliminary hearing. The trial court properly ruled that a formal lineup was not a prerequisite to allowing the witness to make an in-court identification of the accused.

■ In the landmark cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263 (1967), the United States Supreme Court held that a formal lineup is a critical stage of a criminal prosecution and that therefore the Sixth Amendment requires the presence of an attorney for the accused during such a lineup. The Wade-Gilbert rule has been applied to pretrial confrontations and viewing of the accused other than lineups. The Supreme Court has held that a pretrial identification procedure is unconstitutional if it "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the accused] was denied due process of law." Stovall v. Denno, 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). If the pretrial confrontation or viewing of the accused is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," then the witness, having viewed the accused under such suggestive circumstances, may not be allowed to identify the

accused during the trial. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The in-court identification is excludable only if the court finds there was a constitutionally impermissible and suggestive pretrial viewing or confrontation.

We are unaware of any requirements that there must always be a formal lineup. We find nothing in the Wade decision and its companion cases that requires such a lineup in all instances before a witness can make an in-court identification of the accused. The lesson of Wade and its company is to prevent unfair lineups or pretrial confrontations. In the instant case there was no lineup, thus we do not have any question of an unfair lineup. Furthermore, merely seeing the accused in the courtroom when the witness arrived for the preliminary hearing does not constitute a prejudicial or unduly suggestive pretrial confrontation.

It is defendant's fifth assignment that the trial court erred in admitting evidence of a prior assault and harassment by the defendant on the witness, Faye Shaw. Miss Shaw testified that approximately three weeks before the explosion, as she was entering her house, the defendant approached her and attempted to hit Miss Shaw with something in her hand. Miss Shaw related that she was able to get behind the screen door and then close her front door. She summoned the police, but the defendant was no longer present when they arrived. Miss Shaw and Mrs. Jerry West, a neighbor, both testified that approximately two weeks prior to the bombing Miss Shaw received a telephone call, which Mrs. West also heard, in which a voice stated, "I'll get you this time, Faye." Miss Shaw stated that she recognized the voice as that of the defendant.

It is fundamental that evidence of other crimes of which the accused is not on trial should be excluded in order that the accused be tried only for the specific act charged. However, there are exceptions as noted in Roulston v. State, Okl.

Cr., 307 P.2d 861: "Evidence of other crimes in order to be admissible must come within one of the well-recognized exceptions to the rule. That it tends to establish (1) Motive, (2) Intent, (3) The absence of mistake or accident, (4) A common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and, (5) The identity of a person charged with the commission of the crime on trial."

We are of the opinion that the challenged testimony indicating harassment and a possible assault falls within the well-recognized exceptions as stated above. The evidence indicated that there was a continuous scheme on the part of the defendant. Accordingly, we find no error in this regard.

It is defendant's sixth assignment that the trial court committed error in allowing hearsay testimony. Officer Rider, who investigated the scene immediately after the explosion, testified that a man came up to him at the scene and proceeded to tell him, "that it was an Arkansas tag, 1969 Arkansas, the number now I have completely forgotten." Defendant objected to this testimony unless the witness could identify the man. The trial court ruled that the testimony was admissible as part of the res gestae. We are of the opinion that the ruling of the trial court was not clearly erroneous, and further, that any error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. 22 O.S. 1971, § 410.

It is defendant's seventh assignment that it was prejudicial for the case to be tried with the dynamite in the courtroom, particularly in view of the trial court's comments as to the danger of the dynamite. As State's Exhibit Number 7, the dynamite found in the defendant's apartment was properly admitted into evidence. There was no error as to its admission and it was within the trial court's discretion as to whether or not such a dan-

gerous element should be permitted in the courtroom. We find no abuse of discretion. We do not think that the dynamite, as a properly admitted exhibit, should automatically be excluded simply because it indicates the dangerous and serious nature of the crime.

It is defendant's eighth and final assignment that the trial court erred in refusing to grant a new trial because of remarks of the prosecutor during his closing arguments. We have examined the remarks challenged by the defendant and find that they are not so prejudicial, or unwarranted by the evidence, as to constitute error requiring a mistrial.

We have fully examined the assignments of error raised by the defendant and find that they are without merit. We conclude that the defendant had a fair and impartial trial and that the verdict was supported by competent evidence. Accordingly, the judgment and sentence is hereby affirmed.

BUSSEY, P. J., and SIMMS, J., concur.