James Maurice COOPER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. O–78–380.

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1979.

Stanley D. Monroe, Appellant Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Bruce R. Rooker, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, James Maurice Cooper, hereinafter referred to as defendant, was convicted in the District Court, Tulsa County, Case No. CRF–77–1185, of Burglary in the Second Degree. Upon a plea of guilty entered on June 7, 1977, he was sentenced to three (3) years' imprisonment, such judgment and sentence having been suspended upon defendant's good behavior. However, on October 24, 1977, the District Attorney filed an application to revoke the suspended sentence, and a preliminary hearing was held on November 9, 1977. At the January 12, 1978, detention hearing, the court ordered defendant's suspended sentence revoked. Defendant now appeals that order.

The State offered the testimony of three eyewitnesses and the arresting officer at the revocation hearing. Defendant was identified as the individual standing near the complaining witness' car on the morning of October 19, 1977, when the three

eyewitnesses returned to the parking garage of 243 Center Plaza in Tulsa. Defendant then furtively moved to another car, got in and was driven away by his companion. The complaining witness testified that two of his hubcaps had been stolen, and the other two witnesses testified that they had called in a description of the car and license tag number to the police, whereupon defendant was arrested.

Defendant alleges, in his first assignment of error, that it was error for the court to overrule his motion in limine to prevent the in court identification by eyewitnesses Roy David and Jack Newkirk. Fundamental to his theory is a rule of law requiring a pretrial lineup as a precursor to an in court identification. If no such rule exists, then his argument is without validity.

■ Before attending to this, we must consider several factual questions raised by defendant. First, he alleges that there is no question that the witnesses had an extremely limited opportunity to observe the criminal act and its alleged perpetrator, thus, in his opinion, requiring a lineup. However, the witnesses whose in court identifications were permitted had observed the defendant for a period of several seconds to a few minutes during the daytime in a parking garage from a distance of 10 to 25 feet. We find no reason to disturb on appeal the decision of the fact finder that this provided an adequate opportunity for these witnesses to make a credible identification.

■ This leads us to reject, also, defendant's contention that fundamental fairness required a pretrial lineup to insure that the identity of the defendant was based on the witnesses' recollection from the time of the incident in the garage and not on any alleged "showups" at the subsequent hearings.

■ Finally, defendant draws the court's attention to the fact that Mr. Newkirk indicated the witnesses had compared notes, arguing that this suggests they may have improperly influenced one another in determining defendant's identity. He ignores, however, Newkirk's specific indication of the subject of their comparison, not the defendant at all but the license number and the color of the car.

■ To bolster his argument in favor of a pretrial lineup, defendant relies on the language of the United States Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), wherein the Court cited examples of factors which might be considered in determining the constitutionality of a lineup. Even though no lineup had been conducted, defendant attempts to apply the lineup language to the pretrial identification of him by the two witnesses. These factors,[1] even if applied, do not support defendant's position for the following reasons: There was a prior opportunity to observe the criminal act; there was no significant discrepancy between the identification of defendant at any time before or after the in court hearings; no one other than the defendant had been identified as the perpetrator; a valid photographic identification had been completed; no significant time had lapsed between the act and the in court identification.

This Court held in the case of *Grigsby v. State*, Okl.Cr., 496 P.2d 1188 (1972), that a formal lineup is not a prerequisite to an in court identification of a defendant. In that case, a dynamite salesman made an in court identification of the defendant, having seen her only once previously, at the time of the sale. The protections against an unfair lineup afforded by *Wade* were held not applicable since there had been no lineup.

---

1. "[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. . . ." *United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967). (Footnote omitted)

In the case at bar, the defendant was afforded even greater protection than Grigsby because he was identified additionally from a selection of eight to ten photographs. Our defendant stresses the fact that these witnesses saw the accused at pretrial hearings, but, as we stated in *Grigsby*, "merely seeing the accused in the courtroom when the witness arrived for the preliminary hearing does not constitute a prejudicial or unduly suggestive pretrial confrontation." See also *Fortune v. State*, Okl.Cr., 549 P.2d 380 (1976).

The same issue was addressed by the Supreme Court of Delaware wherein an appellant argued that a confrontation between a witness and a defendant at the preliminary hearing and the trial amounted to a tainted "show-up" because "implicit in the court room situations . . . was the message that the police suspected and now accuse these particular men of the crime involved." In finding the argument to be without merit, that Court said:

> "Generally speaking, a court room confrontation, in the presence of court and counsel and with the right of cross examination preserved, provides adequate protection to the rights of an accused of the type sought to be covered by *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); . . ." (Citations omitted) *Laury v. State*, Del. Supr., 260 A.2d 907, 909 (1969).

*Laury v. State*, supra, is cited with approval in *Roberson v. State*, Okl.Cr., 483 P.2d 353 (1971).

Two additional points are worthy of our mentioning with regard to the accurate and just identity of this defendant. First, the judge at the preliminary hearing permitted the defendant to sit in the jury box among six other young men of similar appearance, and at this time Mr. David identified the defendant. Further, the motion in limine to suppress the identification made by Lana Adams was sustained because there was a possibility that her identification was tainted by the fact that the only time she saw the defendant subsequent to his arrest was when she came to the courtroom when the case was filed and that he was the only one there. Thus, it appears that the judge attempted to eliminate any questionable factors in the identification process.

■ Defendant's point that the revocation hearing took place three months following the alleged criminal act is insignificant absent some showing of prejudice. Further, the fact that Mr. David erroneously identified the co-perpetrator of the crime is irrelevant for lack of relationship to the identification of the defendant. Never did either Mr. David nor Mr. Newkirk vacillate in their identification of defendant.

■ In a motion by the defendant to suppress certain evidence, the general rule is that the defendant carries the burden of demonstrating an irregularity in the proceedings. *Ruhm v. State*, Okl.Cr., 496 P.2d 809 (1972). If the claimed irregularity is not apparent from the record there is a presumption of regularity. *Battles v. State*, Okl.Cr., 513 P.2d 1314 (1973). Although the defendant objected to the use of the identifications by David and Newkirk, nothing in the record indicates the exsistence of any pretrial irregularity which would justify the suppression of the in court identifications. For these reasons defendant's first assignment of error is rejected.

■ In his second assignment of error, defendant urges that the revocation of his suspended sentence was based on insufficient evidence that he did "unlawfully, feloniously, wilfully and stealthily take, steal and carry away certain personal property, to wit: two (2) hubcaps of the value in excess of $20.00. . . ." It has been consistently held by this Court that the standard of proof necessary to revoke a suspended sentence is a preponderance of the evidence, which is less than beyond a reasonable doubt, that degree required in a criminal conviction. *Phipps v. State*, Okl. Cr., 529 P.2d 998 (1974), quoting with approval the special concurrence of Judge Simms in *Carson v. State*, Okl.Cr., 493 P.2d 1397 (1972). This Court has defined a "preponderance of the evidence" as that which

is of greater weight and, further, which "could have been deemed more probably true than not . . . ." *Henderson v. State*, Okl.Cr., 568 P.2d 297 (1977).

In the instant case, a full hearing was conducted in which the State presented evidence that the defendant had committed the crime of grand larceny sufficient to support the trial court's decision to revoke his suspended sentence. Roy David, the complaining witness, testified that he had parked his car at 9:00 or 9:30 a. m., October 19, 1977, in the parking garage of 243 Center Plaza in Tulsa, at which time all four hubcaps were in place, and that when he and his two companions returned at 10:30 a. m., two hubcaps were missing. Both he and Jack Newkirk identified the defendant as the individual they had seen standing by David's car, and David further attested that he saw the defendant place one of the wheel covers in his own companion's car before driving away. Eyewitnesses Lana Adams and Jack Newkirk called into the police a description and the license tag number of the automobile in which the defendant drove away. The defendant was arrested some one and a half hours later. David also testified he had given no one permission to remove his wheel covers, which were valued at $95.00 each.

The defendant argues that the record does not disclose that the terms and conditions of probation were offered into evidence. In addition to the fact that this should have been objected to at the hearing, we have held that inherent to a suspended sentence is the condition that the individual whose sentence has been suspended will not commit any felony during the period of suspension. *Anderson v. State*, Okl.Cr., 489 P.2d 797 (1971); *Barthiume v. State*, Okl. Cr., 549 P.2d 366 (1976).

While the decision to revoke a suspended sentence is clearly within the province of the trial judge, *Sage v. State*, Okl.Cr., 546 P.2d 1332 (1976), it is within the jurisdiction of this Court to reverse revocation orders not supported by competent evidence, 22 O.S.Supp.1978, § 991b, and *In re*

*Collyar*, Okl.Cr., 476 P.2d 354 (1970). However, we will not do so absent an abuse of discretion by the trial judge, *Allison v. State*, Okl.Cr., 562 P.2d 883 (1977); *Wallace v. State*, Okl.Cr., 562 P.2d 1175 (1977), and the record before us fails to disclose such indiscretion. The decision of the trial judge is clearly supported by evidence that the defendant violated the terms of his probation. For these reasons we *AFFIRM* the decision of the District Court to revoke the suspended sentence.

CORNISH, P. J., and BRETT, J., concur.