James William YOUNG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–321.

Court of Criminal Appeals of Oklahoma.

Aug. 29, 1983.

Rehearing Denied Oct. 28, 1983.

---

Thomas J. Ray, Jr., Asst. Public Defender, Oklahoma County, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

James William Young was convicted in Oklahoma County in connection with the shooting death of 16 year old Candence Wade.

The decisive issue on appeal is the admissibility of appellant's confession. We hold that the confession should have been suppressed.[1]

The homicide occurred at about 12:30 a.m., August 12, 1980. Appellant was arrested as a material witness between 8:00 and 8:30 a.m. that same morning at his place of employment. He was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and was transported to the police station. He was again advised of his *Miranda* rights, and was interviewed for quite some time by one of the arresting detectives. It appears that appellant denied any involvement in the crime.

At lunchtime, appellant's father brought him food. He was not confined in a jail cell, but rather remained seated in the Detective Bureau. That afternoon, police investigators asked him to submit to a polygraph examination. He was told that if he cleared the test, "and it would be found that he was telling the truth," he could be released. Appellant agreed to take the test to "help the investigation". Appellant was regarded as a possible suspect based on vehicle and suspect descriptions received by police investigators. However, his brother, the victim's boyfriend, was regarded as the prime suspect.

At about 4:30 p.m., appellant was transported to the testing location. The police officer/examiner again advised appellant of his *Miranda* rights and his right to decline the test. Appellant indicated that he wished to proceed.

It took about an hour to prepare appellant for the examination. After the test, the examiner told appellant that he thought that he had not answered the questions truthfully. Appellant protested that he had been truthful, but the officer told him that "it would not do for him to tell me that he had been truthful because I knew otherwise [a]nd he knew otherwise". Appellant then told the officer that he in fact shot the victim in self-defense, and began crying.

For the next fifteen or twenty minutes, as appellant regained his composure, he discussed with the examiner whether he should also confess to the investigating detectives. The discussion included the following:

> ... the story that he told me what happened out there led us both to decide that since it was not a case of cold-blooded murder as it may seem to be, that instead of having Detectives working against him, trying to build up a case of cold-blooded murder, it would be better to have them working for him, to show that it was more like he had told me it happened out there where the young lady—with the young lady having a knife and him having a shotgun in self defense. (Tr. 149).

\*   \*   \*   \*   \*   \*

> ... as opposed to denying that he had anything to do with it and taking his chances in court, trying to convince a jury and a judge and jury that he was perfectly innocent and had nothing to do with it, it would probably be better for him to get the people on his side to say that it was not cold-blooded murder and that it happened like he said.
>
> I explained to him that once you lie to somebody, they don't have much sympathy for you as opposed to when you are telling the truth. I explained to him that how people will forgive you, you know, that's the American way. You say that

---

1. The record on appeal did not originally reflect an independent determination by the trial judge of the voluntariness of the confession, as required by *Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). We remanded to permit the entry of a proper finding under *Sims.* Cf. *Tice v. State,* 497 P.2d 444 (Okl.Cr. 1972). The judge's nunc pro tunc finding that the confession was in fact voluntary has now been filed in this Court.

you are sorry for doing something and then when they admit the truth to you and then, you start trying to help that individual. These things were discussed with Mr. Young and he thought that would probably be the best way to handle it. (Tr. 151).

\* \* \* \* \* \*

Q: Based on your assurance, he decided to tell the police officers then; is that right or, based on your conversation?
A: Based on the conversation, yes. As far as pointing out—as far as pointing it out to him that I felt it would be in his best interest to tell the truth as opposed to continuing on with the story that he had nothing to do with it and he didn't hardly even know the girl, like he had stated previously. (Tr. 152)

Finally, at 7:30 or 8:00 p.m., the examiner led appellant back to the investigating officers and stated that appellant wanted to tell them about the homicide. Appellant's eyes were watery, and it was apparent that he had been crying. The officers permitted appellant to telephone his father, and he was overheard saying that "I did it. I did it, Dad. I shot her." As he spoke, he began crying again.

Appellant himself then indicated that he wished to tell the detectives about the crime. He was first placed under arrest for the homicide, and was again advised of his *Miranda* rights. Appellant gave the officers an oral statement at the training academy, and then a written one back at the Detective Bureau. The oral and written statements given to the detectives, and the admission to his father over the telephone, were admitted into evidence against him at trial. Appellant was nineteen years of age.

■ The ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. In determining whether the maker's will was overborne, the court must look to the totality of the surrounding circumstances, both the characteristics of the accused and the details of the interrogation. *Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Foster v. State,* 657 P.2d 166 (Okl.Cr.1983).

The proper inquiry is whether the confession was free and voluntary, i.e., not extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). When the appellant challenges the admissibility of a statement or confession, the burden is on the State to show that it was voluntary, *Hardin v. State,* 649 P.2d 799 (Okl.Cr.1982), which burden must be satisfied by at least a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

■ Appellant was repeatedly advised of his *Miranda* rights, and such awareness is part of the totality of the circumstances to be considered. *People v. Noe,* 86 Ill.App.3d 762, 42 Ill.Dec. 105, 408 N.E.2d 483 (1980). Moreover, we are unable to say that appellant's tears did not arise "from apprehension due to the situation in which the accused found himself". *Hawkins v. Wainwright,* 399 So.2d 449, 450 (Fla.App.1981). Finally, appellant was not held behind bars. However, we are compelled to find that this confession was not voluntary in the constitutional sense.

As a general rule, the fact that the accused confessed in anticipation of, during or following a polygraph examination does not render the confession inadmissible. See Annot., 89 A.L.R.3d 230 (1979). This Court has recognized the validity of the use of the polygraph as an instrument of criminal investigation. *Leeks v. State,* 95 Okl.Cr. 326, 245 P.2d 764 (1952). The police should be permitted to inform the person who has taken the polygraph examination that it appears from the polygraph that he has been deceptive, for otherwise the effective use of the polygraph in the investigation of crime would, as a practical matter, be foreclosed. See, *State v. Clifton,* 271 Or. 177, 531 P.2d 256 (1975).

However, the examiner in the present case did not confine his report to the facts,

but rather couched it in such terms as to imply that because of the polygraph results, he knew that appellant had been untruthful. The potential unreliability of the polygraph has been commented upon by this Court, and is at the root of the rule forbidding the use of polygraph examination results in court. See *Fulton v. State,* 541 P.2d 871 (Okl.Cr.1975). Although the implicit misrepresentation is not as egregious as that in the cases cited by appellant, *People v. Zimmer,* 68 Misc.2d 1067, 329 N.Y.S.2d 17 (1972); and *United States, ex rel. Monks v. Warden, N.J. State Prison,* 339 F.Supp. 30 (D.N.J.1972), we regard it a relevant factor.

Furthermore, mere advice or exhortation by the police that it would be better for the accused to tell the truth, unaccompanied by either a threat or a promise, does not render a subsequent confession involuntary. *People v. Jimenez,* 21 Cal.3d 595, 147 Cal.Rptr. 172, 580 P.2d 672 (1978). See also, *People v. Noe,* supra; *State v. Theriault,* 425 A.2d 986 (Me.1981); *United States v. Ballard,* 586 F.2d 1060 (5th Cir.1978); and, *State v. Newfield,* 229 Kan. 347, 623 P.2d 1349 (1981). This includes statements that people would think better of the accused if he told the truth. *State v. Newfield,* supra; *State v. Theriault,* supra.

However, the examiner went beyond merely exhorting appellant to tell the truth to the detectives. He appears to have told appellant that he could get the detectives "working for him", that he could "get the people on his side", i.e., the jury, and that he could receive "sympathy" and forgiveness, by confessing. He also appears to have told appellant that, absent a confession, the detectives would work against him "trying to build up a case of cold-blooded murder". We are constrained to find that such admonitions constituted direct or implied promises and threats within the meaning of *Malloy v. Hogan,* supra. Moreover, the suggestion that appellant would have to "convince a ... judge and jury that he was perfectly innocent and had nothing to do with it" is a gross misstatement of the law. See, *In re: Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Finally, as one taken into custody "as a material witness", appellant had a statutory right to be taken before a district judge "without unnecessary delay", so as to be "immediately" informed of his constitutional rights, including "his right to be released from custody upon entering into a written undertaking in the manner provided by law". See, 22 O.S.1981, § 719. Although it does not appear that appellant was taken before a district judge at any point during the twelve hour period at issue, we will not assume that the officers violated the statutory injunction against "unnecessary delay", since the issue was not raised in the trial court. However, we regard the fact that appellant was not fully informed of his rights in this respect a relevant factor in the voluntariness analysis.

We must conclude that under the totality of the circumstances, the state failed in its burden of proving the voluntariness of the confessions.

■ The State's suggestion that the erroneous admission of this evidence was harmless error is without merit. The harmless error doctrine does not apply to confessions and statements which are involuntary, as opposed to those merely in violation of *Miranda v. Arizona,* supra. See, *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Smith v. Estelle,* 527 F.2d 430 (5th Cir.1976); and, *State v. Anderson,* 298 N.W.2d 63 (Minn.1980). See also, *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

This judgment and sentence is REVERSED and the cause REMANDED for a new trial.

BRETT, J., concurs.

BUSSEY, P.J., dissents.