Kenneth L. TIBBETTS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–212.

Court of Criminal Appeals of Oklahoma.

Aug. 9, 1989.

John P. Zelbst, Lawton, for appellant.

Robert H. Henry, Atty. Gen. and Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Kenneth L. Tibbetts, was tried by a jury in Comanche County District Court, Case No. CRF–81–660, and convicted of Kidnapping in violation of 21 O.S. 1981, § 741, First Degree Rape in violation of 21 O.S.1981, § 1114(A)(1), and Forcible Oral Sodomy in violation of 21 O.S.1981, § 886. Appellant was found guilty of these same offenses in a previous trial. On appeal from that verdict, however, this Court found a fundamental error in jury selection, and reversed and remanded for a new trial. *See Tibbetts v. State,* 698 P.2d 942 (Okl.Cr.1985). The jury in the present case set punishment at ten (10) years' imprisonment for Count I, forty-five (45) years' imprisonment for Count II, and ten (10) years' imprisonment for Count III, to run consecutively. The judge sentenced appellant accordingly. From this judgment and sentence, appellant has perfected his appeal to this Court.

On September 27, 1981, at about 1:00 p.m., L.A., then twelve years of age, and her friend Steve Palmer, then fourteen, were playing on the grounds of the Woodland Hills Elementary School in Lawton, Oklahoma. Appellant approached them and said he was a security guard in charge of protecting the area from vandals. He then ordered the children to get down on their hands and knees. Palmer soon escaped and ran to a nearby house for help.

When Palmer was gone, appellant ordered L.A. into his car and said he would drive her to her house. She showed him which street was hers and he bypassed it, eventually pulling onto Cache Road. Appellant continued to drive in the direction of a wildlife refuge. He stopped the car several times, and at one point, tore off L.A.'s shirt and bra. Appellant eventually stopped on the side of the road and forced L.A. to orally sodomize him. He then carried L.A. into the grass, again forced her to commit oral sodomy, and finally raped her. Before leaving, appellant told L.A. that he would leave her bra and shirt by the side of the road. He also reminded her that he knew where she lived, and warned her not to tell anyone about what he had done.

L.A. put on her shirt but left her torn bra near the road where she had found it. Deputy Richard West discovered the bra while investigating the scene of the crime later that day. L.A. then walked to a nearby trailer home, told a woman there what had happened, and was subsequently taken to a Lawton hospital. While there, she told Officer Beverlee Hill that her assailant was a white male, 5'8" to 5'10", with sandy brown, bushy hair and a mustache. She said he was wearing rimmed sunglasses, a white tee shirt with red and blue stripes running from collar to each sleeve, faded blue overalls, and suede ankle boots. L.A. described her assailant's car as a maroon over silver monte carlo with no floor mats

and a gold digital watch hanging from the rearview mirror.

Dr. John Henry Migliaccio and Nurse Janice Ann Hagy, who examined L.A. just after the rape, testified that her vaginal opening was red and swollen, and had been bleeding. Dr. Migliaccio stated that a pelvic exam revealed lacerations on both the vaginal opening and the hymen. Dr. Richard Boatsman testified that a venereal disease test performed at that time confirmed that L.A. had gonorrhea. Sandra Lucas, manager of the venereal disease clinic at the City Health Department, testified that on October 2, 1981, five days after the offense, appellant voluntarily entered the clinic complaining of symptoms which suggested that he had some form of venereal infection. His test results confirmed that he had gonorrhea.

On October 3, 1981, Officer Larry Mahamed stopped a monte carlo matching the description which L.A. had given to the police. The driver, appellant, also fit L.A.'s description. When he got closer to the car, Officer Mahamed noticed that it contained no floor mats, and that a gold digital watch hung from the rearview mirror. Appellant was subsequently arrested. A consent to search form which he signed led police to his apartment, where they discovered a white tee shirt with red and blue stripes and a pair of blue overalls.

For his first proposition, appellant argues that the trial court erred in refusing to allow him to present evidence that the prosecutrix may have engaged in sexual activity with other men before the alleged rape. Defense counsel informed the trial court that some of L.A.'s neighbors stood willing to testify that on several occasions prior to the rape, they had seen L.A. meeting some soldiers on one of their driveways. She would apparently leave with them and return at odd and varying hours. Appellant argues that he should have been allowed to introduce this evidence to show that L.A. could have been infected with gonorrhea by someone other than him. We disagree.

In *Shapard v. State*, 437 P.2d 565, 600 (Okl.Cr.1967), *cert. denied*, 393 U.S. 826, 89 S.Ct. 89, 21 L.Ed.2d 97 (1968), this Court set forth some rules to govern the admission, in a rape trial, of evidence relating to "the general reputation of the prosecutrix for lack of chastity...." One of the issues which we then addressed was whether an accused in a rape trial should be allowed to present evidence of a prosecutrix's sexual history to rebut her claim that she became pregnant as a result of the rape. We held that "whether the charge be forcible or statutory rape," i.e., whether or not consent is an issue, "evidence of specific acts of sexual intercourse between the prosecutrix and persons other than the accused, occurring near the time of conception, are admissible as tending to show that the pregnancy resulted from sexual connection with persons other than the accused...." *Id.* Appellant cites this principle as support for his argument that because the State offered evidence that he and L.A. had gonorrhea in an attempt to substantiate her story that she contracted the disease when he raped her, he should be allowed to offer evidence that she had sex with another person by whom she could have been infected.

Title 22 O.S.1981, § 750, Oklahoma's "rape shield" statute, states that

[i]n any prosecution for rape or assault with intent to commit rape, opinion evidence of, reputation evidence of and evidence as to specific instances of the complaining witness' sexual conduct *is not admissible on behalf of the defendant in order to prove consent by the complaining witness.*

(Emphasis supplied.) Arguably, this statute forbids the introduction of either the complaining witness's sexual reputation or specific instances of her past sexual conduct—*but only when* such evidence is being used to prove that she consented to the act which she claims constituted the crime of rape. *See, e.g., Woods v. State*, 657 P.2d 180, 182 n. 1 (Okl.Cr.1983). *Contra Cameron v. State*, 561 P.2d 118, 121 (Okl.Cr. 1977). Thus, because appellant wanted to introduce evidence of L.A.'s prior sexual conduct not to prove consent, but instead to show that she may have contracted gonor-

rhea from one of her other sexual partners and not from him, Section 750 would not seem to forbid him from so doing. *See also* 1 Charles E. Torcia, *Wharton's Criminal Evidence* § 174 (14th ed. 1985), at 737.

▮ In light of the facts presented in the instant case, however, we need not now address the scope of Section 750. Whether or not that statute would preclude an accused from using evidence of a complaining rape witness's prior sexual conduct to rebut her claim that she had contracted a venereal disease as a result of being raped by the accused, appellant's proffered evidence in this case simply was not relevant on the issue of L.A.'s prior sexual conduct. *See also Heavener v. State,* 706 P.2d 905, 908 (Okl.Cr.1985). Appellant wanted to have two of L.A.'s neighbors take the stand and testify that they had seen her leave with soldiers and reappear at odd hours. (Tr. 9) This evidence in no way suggests either that L.A. had engaged in sexual acts with these soldiers, or that, if she had, these soldiers were then infected with gonorrhea. The excluded evidence did not tend to prove that L.A. contracted gonorrhea from a source other than appellant, and the trial court properly denied its admission. Appellant's first proposition is denied.

In his second proposition, appellant argues that L.A.'s in-court identification of him was tainted by a prior suggestive identification and thus should have been suppressed. The first time L.A. positively identified appellant was during his preliminary hearing on January 4, 1982. Appellant claims that this pre-trial identification was tainted for the following reasons: he was the only man at the defense table; and, prior to the preliminary hearing, the State told L.A. that it was important for her to identify appellant and that it would be easy for her to pick him out since she would know which person was the attorney. According to appellant, the preliminary hearing was in effect a one person lineup and served as the basis for L.A.'s subsequent in-court identification of him during trial. A timely and specific objec-

tion preserved this alleged error for our review.

▮ Appellant concedes in his brief that even if L.A.'s in-court identification of him was preceded by a suggestive pre-trial identification, it was nonetheless properly admitted as long as it was reliable under the "totality of the circumstances." *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Since the danger sought to be avoided is misidentification due to the suggestiveness of the lineup, the factors to be considered in determining the reliability of the subsequent in-court identification focus upon the quality of the witness's observations before the lineup occurred. These factors include: opportunity of the witness to view the criminal at the time of the crime; witness's degree of attention; accuracy of witness's prior description of the criminal; level of certainty demonstrated by witness at the time of the confrontation; and length of time between crime and confrontation. *See id.*

We find and appellant concedes in his brief that the approximately one hour of time which L.A. spent with appellant provided her with a sufficient opportunity to view him. She was also very attentive during this ordeal, subsequently providing police with a detailed description of appellant as well as of his car and its contents. L.A.'s description of appellant was consistent with that given by Steve Palmer, the other witness to this crime. We cannot determine whether L.A. was unwavering in her identification of appellant at the preliminary hearing preceding the first trial, because the preliminary hearing transcript has not been included in the appeal record. However, L.A. did testify that her identification of appellant at that time was based upon her memory of his face, which she could not forget. (Tr. 156, 157) Finally, a little over three months had elapsed between the time of the crime and L.A.'s first identification of appellant at preliminary hearing. Yet, L.A. testified that during a police station lineup held about *six days* after the rape, she could have, but out of fear did not, identify appellant. Under these circumstances, this three month lapse of time seems inconsequential.

After applying the five factors used to determine reliability under the totality of the circumstances approach, we believe that L.A.'s in-court identification of appellant was not the product of the earlier preliminary hearing identification, but was instead based upon her observations of him during the rape. We thus conclude that the trial court properly allowed L.A. to make an in-court identification of appellant. Appellant's second proposition is denied.

For his third and final proposition, appellant argues that several "bad faith" questions asked by the State denied him a fair trial. However, appellant failed to cite any relevant authority to support his various claims. "This Court will not consider on review arguments which are neither presented clearly nor supported properly." *Fuller v. State*, 751 P.2d 766, 768 (Okl.Cr. 1988). Appellant's third proposition is denied.

Finding no error, judgment and sentence is AFFIRMED.

LANE, V.P.J., concurs.

PARKS, P.J., and LUMPKIN, J., concur in result.