Reginald Eugene **TURNER** and Kenneth Ray Cole, Appellants,

*v.*

**STATE** of Oklahoma, Appellee.

Nos. F–87–743, F–87–744.

Court of Criminal Appeals of Oklahoma.

Dec. 10, 1990.

Rehearing Denied Feb. 8, 1991.

John M. Burnett, Oklahoma County Public Defender's Office, Oklahoma City, for appellants.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Judge:

Appellants Reginald Eugene Turner and Kenneth Ray Cole were tried by jury and convicted of Robbery with Firearms, After Former Conviction of Two or More Felonies, in violation of 21 O.S.Supp.1982, § 801, in the District Court of Oklahoma County, Case No. CRF–87–236. The jury recommended punishment of five hundred (500) years imprisonment for each defendant. The trial court sentenced accordingly. From these judgments and sentences, this appeal has been perfected.

On November 22, 1986, the Appellants robbed the McDonald's Restaurant at 2828 South Prospect in Oklahoma City. A bus load of school children had entered the restaurant and were being served when the Appellants and a third co-defendant, Johnny Lee Crook,[1] stepped inside. Crook walked behind the serving counter and demanded that the safe be opened. The manager, Charles Bell, stalled for time by using several dummy combinations on the safe. Dissatisfied with the pace of the robbery, Appellant Turner walked behind the counter and pulled the gun from Crook's waistband. Opening the safe on the third attempt, Mr. Bell informed the

---

1. Co-defendant Johnny Lee Crook pled guilty on April 3, 1987, to a charge of Robbery with Firearms, After Former Conviction of a Felony and was sentenced to thirty-three (33) years in prison.

Appellants that the inside compartment had a ten (10) minute time lock on it and could not be opened immediately. Turner then grabbed rolls of quarters which were kept in a change rack inside the door of the safe and Turner told Mr. Bell to go out to the front of the restaurant and open the cash registers. Turner had grabbed the money from only two of the five registers when he saw a young boy attempt to run out of the restaurant. Raising the gun above his head, Turner yelled for the boy to get back into the restaurant and told everyone to get down on the floor; shouting that it was a robbery. Refusing to comply, Mr. Bell told Turner "you're going to have to put me down". Turner pointed the gun at him and pulled the trigger but the gun did not fire. Mr. Bell then attempted to tackle Turner when he noticed Appellant Cole standing at the front of the counter with his left hand inside his jacket pocket. When Turner lowered the gun and dropped his hand to his side, the gun discharged into the floor. Pieces of the floor struck two of the employees. The Appellants then ran out of the restaurant.

The Appellants were arrested on December 16, 1986, and taken to the Edmond Police Department. After being advised of their *Miranda* rights by Oklahoma City Detective Robert Shahan, both Appellants waived their rights and confessed to committing the robbery. The Appellants were subsequently transferred to the Oklahoma City Police Department, where after again being advised of their *Miranda* rights, they confessed a second time. This second confession was videotaped and played for the jury at trial. Both Appellants waived their Fifth Amendment privileges and testified at trial. Appellant Turner stated that he did not participate in the robbery, but was at home babysitting. He testified that he did not remember making any incriminating statements concerning the robbery, but if he had it was due to inducements and coercion by the police. Appellant Cole similarly denied any participation in the robbery, stating that he was at home with his girlfriend. He testified that any incriminating statements he may have made were the result of threats and promises made by the police.

■ In the first assignment of error, the Appellants contend that the trial court erred in failing to sustain a motion in limine and in admitting into evidence their previous felony convictions. We disagree. Evidence of a prior felony conviction is admissible to impeach a defendant's credibility once he testifies. *Campbell v. State*, 636 P.2d 352, 356 (Okl.Cr.1981). Title 12 O.S.1981, § 2609, provides that proof of former convictions may be admitted into evidence when the crime involves dishonesty or is a felony. If the crime is a felony, the statute further requires that the evidence have a probative value outweighing any prejudice appellant might suffer. The trial judge has wide latitude in determining the probative value of the prior convictions. *Henegar v. State*, 700 P.2d 659, 661 (Okl. Cr.1985). This discretion is limited by the guidelines set forth by this Court in *Robinson v. State*, 743 P.2d 1088, 1090 (Okl.Cr. 1987). *See also Hardiman v. State*, 798 P.2d 222 (Okl.Cr.1990).

The record reflects that the second page information filed against each Appellant reflected two (2) prior convictions for armed robbery. Additional prior convictions for second degree burglary, unauthorized use of a motor vehicle and larceny of merchandise from a retailer were alleged against Appellant Cole. Prior to overruling the motion in limine, the trial court heard both Appellants indicate their desire to waive their Fifth Amendment privileges and to take the witness stand to testify in their own behalf, against the advise of their attorney. Defense counsel argued that as both Appellants had prior armed robbery convictions, the risk was great that the jury would be prejudiced against the Appellants because of the similarity of the current offense and the past offense.

■ In *Robinson* we recognized that a special problem exists when the previous conviction is the same or substantially the same as that for which the defendant is on trial. "In these situations, there exists a pressure on the jurors to think that if the defendant did it once, he could do it again."

743 P.2d at 1091. This author noted in a specially concurring opinion to *Hardiman* that the amplification of the balancing test set forth in *Robinson* provided the necessary safeguards to ensure that if a defendant on trial is convicted, it will be through the evidence which shows him guilty of the offense charged. 798 P.2d at 225. Prior convictions which are the same or similar to the offense on trial will be reviewed with scrutiny. There is a presumption of prejudice as to prior convictions of this nature which must be overcome by the prosecution. However, if the defendant testifies, his testimony will be subject to impeachment which will provide the jury with an accurate picture of his criminal past.

In the present case, the probative value of the prior convictions outweighs any prejudicial effect upon the Appellants. Both Appellants testified that they did not commit the robbery. The prior convictions were relevant to the credibility of this defense. Therefore, in accordance with our decision in *Hardiman*, the trial court did not abuse its discretion in overruling the motion in limine and admitting the prior convictions.

■ Further, Appellant argues that reversible error occurred when the trial judge failed to state whether he considered the prior conviction as a crime of dishonesty or whether he used the balancing test. Although Appellant is correct in noting that the motion was overruled without comment, we reject Appellant's argument of reversible error and remind Appellant that we will not presume error from a silent record. *See Ellis v. State*, 795 P.2d 107, 109 (Okl.Cr.1990); *Claunch v. State*, 501 P.2d 850, 852 (Okl.Cr.1972). Moreover, as the prior conviction was clearly a felony, we need not debate further under which category it was placed by the trial judge. Based upon the foregoing, this assignment of error is denied.

■ Appellants contend in the second assignment of error that the trial court erred in failing to suppress the in-court identification made by Charles Bell. Appellants argue that the identification was tainted by his view of the Appellants at the preliminary hearing. Prior to entering the courtroom for the preliminary hearing, Mr. Bell looked into the courtroom and saw the Appellants, in handcuffs and in the presence of two deputies, dressed in orange jail coveralls. Appellants note that they were the only people in the courtroom in orange coveralls and that they were the only black males in the room. Prior to the preliminary hearing, Mr. Bell had not been shown any photographic line-ups or been exposed to a formal line-up.

■ Merely seeing the accused in the courtroom when the witness arrives for the preliminary hearing does not constitute a prejudicial or unduly suggestive pretrial confrontation. *Grigsby v. State*, 496 P.2d 1188, 1194 (Okl.Cr.1972). However, seeing the accused dressed in jail clothes, handcuffed and accompanied by deputies makes this particular pre-trial viewing unnecessarily suggestive. Even so, this does not result in the automatic exclusion of the in-court identification by Mr. Bell. *Cole v. State*, 766 P.2d 358, 359 (Okl.Cr.1988). The courtroom identification will not be invalidated if it can be established that it was independently reliable under the totality of the circumstances. *Id.* Our inquiry becomes "whether under all the circumstances, the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977); *Bryson v. State*, 711 P.2d 932, 934 (Okl.Cr.1986), *cert. denied* 476 U.S. 1121, 106 S.Ct. 1986, 90 L.Ed.2d 668 (1986). In determining the reliability of an in-court identification we must consider: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Id.*

In the instant case, Mr. Bell observed both Appellants for approximately five minutes under good lighting conditions. Mr. Bell was attentive throughout the robbery and provided the police with descrip-

tions of the Appellants. He identified the gun carried by Appellant Turner, explaining that he had been a criminal investigator with the United States government for 23 years before retiring.

The first time Mr. Bell identified the Appellants was at the preliminary hearing held on February 6, 1987. At that time, Mr. Bell identified Appellant Turner as the first individual into the restaurant. However, at the trial held on April 6 and 7, 1987, he identified Turner as the second individual who held the gun. At trial, Mr. Bell repeatedly testified that his identification of the Appellants was based on his memory of the men at the time of the robbery, stating that he would "never forget what they look like." (Tr. 62). Although Mr. Bell may have confused the role of the Appellants at the preliminary hearing, he consistently identified both Appellants as the participants in the robbery. In light of Mr. Bell's emphatic trial identifications of Appellants, the two month time lapse between the offense and the first identification is inconsequential. Based on the foregoing, we find that Mr. Bell's in-court identification of the Appellants was not the product of the earlier preliminary hearing identification, but was the result of his observations of the Appellants during the robbery. *See Tibbetts v. State*, 778 P.2d 925, 928 (Okl.Cr.1989); *McCaulley v. State*, 750 P.2d 1124, 1128 (Okl.Cr.1988). Therefore, the trial court properly allowed Mr. Bell to make the in-court identification of Appellants. This assignment of error is therefore denied.

■ Appellants allege in their third assignment of error that the trial court erred in failing to grant their motion to suppress the confessions. Appellants contend that the confessions were not voluntary, but were the product of coercion and inducement. Specifically, the Appellants argue that Detective Shahan stated that he would use his influence with the District Attorney to get them a light sentence if they would cooperate and that Shahan promised to release Appellant Cole's mother's car and Appellant Cole's girlfriend.

The Appellants and Patricia Arps, Cole's girlfriend, were arrested during the early morning hours of December 16, 1986, and taken to the Edmond Police Department. At the pre-trial motion hearing, Detective Shahan testified that once at the police station he advised each Appellant, individually and separately, of his constitutional rights. Each Appellant indicated that he understood his rights and wished to waive them and speak with the officer. Handing each Appellant a waiver form, Shahan testified that he had each Appellant verbally read the rights back to him before signing the waiver. Both Appellants signed the waiver. He further testified that neither Appellant appeared to be disoriented or under the influence of any type of drugs or alcohol. Shahan stated that he in no way threatened or coerced the Appellants to sign the waivers.

After the signing of the waivers, Shahan proceeded to question the Appellants about the robbery. Both Appellants confessed to participating in the robbery. Later that day, Appellants were transferred to the Oklahoma City Police Department. Shahan again advised the Appellants of their rights and received verbal waivers from each Appellant. Each Appellant again recounted his participation in the robbery. These second confessions were videotaped. The Appellants were not informed that they were being videotaped. Shahan stated that neither Appellant appeared to be excessively tired or disoriented while being questioned at the Oklahoma City police station. At trial, Shahan testified that Patricia Arps was arrested by the Edmond Police but that he released her upon receipt of a hold from another state on robbery charges.

Both Appellants testified at the pre-trial hearing. Appellant Turner stated that the only reason he confessed to the crime was because he was tired and because of Shahan's promises that he would use his influence to get a light sentence if the Appellant cooperated. Turner also stated that he did not remember signing the rights waiver form. When presented with the signed waiver form during cross-examination, Turner denied his signature. Appellant

Cole similarly testified that he was coerced into confessing by a lack of sleep, and by promises from Shahan that he would release his mother's car and that he would let Patricia Arps go without filing charges against her. Cole also did not remember signing the waiver form and denied his signature when presented with a copy of the waiver. After considering the conflicting testimony, the trial judge overruled the motion to suppress and admitted the confessions.

The ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. In determining whether the maker's will was overborne, the court must look to the totality of the surrounding circumstances, both the characteristics of the accused and the details of the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Young v. State*, 670 P.2d 591, 594 (Okl.Cr.1983). Here, the Appellants were repeatedly advised of their constitutional rights, and such awareness is part of the totality of the circumstances to be considered. *Id.* at 594. Both Appellants signed a written waiver of rights form. These waivers are of themselves strong evidence of the voluntariness of the Appellants' statements. *See Smith v. State*, 674 P.2d 569, 572 (Okl.Cr.1984).

Further, we have fully reviewed the record, including the in-camera testimony, the testimony at trial and the videotape, and agree with the trial court that the statements were not coerced. Appellants' allegations of threats and coercion are not borne out by the record. The record is devoid of any inducements offered to the Appellants in exchange for their confessions. *See Crawford v. State*, 688 P.2d 347, 349 (Okl.Cr.1984). This Court has held on numerous occasions that when evidence taken in-camera is sufficient to support the trial court's ruling that the defendant's statement was voluntarily made, and thus admissable, that ruling will not be disturbed on appeal. *McAdams v. State*, 763 P.2d. 391, 393 (Okl.Cr.1988); *Rosteck v. State*, 749 P.2d 556, 558 (Okl.Cr.1988). Ac-

cordingly, this third assignment of error is denied.

In the final assignment of error, Appellants contend that the trial court erred in instructing the jury as to the general enhancement provisions of the Habitual Offender Act pursuant to 21 O.S.1981, § 51, rather than the specific enhancement provisions of 21 O.S.Supp.1982, § 801, pertaining to robbery with firearms. Appellant concedes that no objection to the instructions was raised at trial and that no requested instructions were offered, but argues that the failure to properly instruct the jury was fundamental error.

It is well established that when the defendant fails to object to instructions and fails to submit written requested instructions, where the instructions given adequately cover the subject matter of inquiry, any error is waived. *Battles v. State*, 732 P.2d 480, 482 (Okl.Cr.1987); *Maghe v. State*, 620 P.2d 433, 436 (Okl.Cr.1980); *Kelsey v. State*, 569 P.2d 1028, 1031 (Okl.Cr. 1977). In the instant case, the instructions did not properly state the law as it applied to both defendants. In *Chambers v. State*, 764 P.2d 536, 538 (Okl.Cr.1988), we held that when one of the predicate offenses is not a robbery offense and the new offense is a robbery offense, it is proper to enhance under either Section 51 or Section 801. The prior convictions of Appellant Cole used to enhance his sentence consisted of two (2) convictions for Robbery with Firearms, one conviction each for Second Degree Burglary, Unauthorized Use of a Motor Vehicle and Larceny of Merchandise from a Retailer. Therefore, as the punishment for Appellant Cole could have been enhanced under either Section 51 or Section 801 the jury was properly instructed as to the provisions of Section 51.

The prior convictions used to enhance the sentence of Appellant Turner consisted solely of two (2) convictions for Robbery with Firearms. In *Ellis v. State*, 749 P.2d 114, 116 (Okl.Cr.1988), we held that when the defendant has been convicted of three (3) separate and distinct robberies in violation of Section 801, then the specific enhancement provisions are trig-

gered. If the State seeks to enhance punishment, it must be done in compliance with the specific provisions of Section 801 rather than the general enhancement provisions of Section 51. Therefore, the jury was not properly instructed on the law as it applied to Appellant Turner.

We must now determine if the error was harmless or if the error requires a modification of the sentence. We have previously determined that modification is a proper remedy if error occurs through instructions by the court which utilize the improper punishment enhancement provisions, and that error of this type is of a fundamental nature. *Novey v. State*, 709 P.2d 696, 700 (Okl.Cr.1985). Therefore, due to the trial court's failure to instruct the jury as to the punishment provisions of 21 O.S.Supp.1982, § 801, this Court is required to modify the punishment.

The amount of the modification is to be determined by the facts of the case. Appellant Turner has been previously convicted of two (2) separate offenses of Robbery with Firearms. The enhancement provisions of 21 O.S.Supp.1982, § 801, become applicable upon conviction of the third separate and distinct offense of Robbery with Firearms or other dangerous weapon under Section 801. The provisions of Section 801 require a minimum sentence of ten (10) years, that the offender serve a minimum of ten (10) calendar years and that the sentence not be subject to probation, parole, or other statutory reductions. The enhancement provisions of 21 O.S.1981, § 51(B), set forth only that the minimum sentence is twenty (20) years when the conviction is for a third or subsequent offense. In addition, 22 O.S.Supp.1986, § 991a(B), provides that persons being sentenced for the third or subsequent felony conviction shall not be eligible for probation.

In this case, the jury recommended punishment of five hundred (500) years when instructed the minimum possible sentence was twenty (20) years instead of ten (10) years. The recommended sentence speaks for itself that the jury was not influenced by the minimum sentence authorized.

However, based on the decision in *Ellis* that this type of error is of a fundamental nature we must modify the sentence to correct the error. *Id.* Based on the foregoing, Appellant Turner's sentence is modified to four hundred (400) years under the terms set forth in 21 O.S.Supp.1982, § 801. Accordingly, the judgment and sentence is AFFIRMED as MODIFIED.

LANE, V.P.J., and BRETT, J., concur.

JOHNSON, J., specially concurring.

PARKS, P.J., concurs in part/dissents in part.

JOHNSON, Judge: special concurrence.

I concur in the result of the majority opinion herein as it relates to this case but need to point out as to Proposition I, I concur based upon stare decisis. So that my position is clear, I again refer to my concurring in the result opinion in *Hardiman v. State*, 798 P.2d 222 (Okl.Cr.1990) and I would limit the admissibility of evidence of prior conviction only as to the number of prior convictions where there is a similarity between the past crime and charged crime. As to other prior crimes for impeachment purposes, no limitation should be placed upon same. Again, my position is clearly written in *Hardiman*.

PARKS, Presiding Judge, concurring in part/dissenting in part:

I concur in the decision reached by the majority as to appellant Cole. However, I strongly disagree with the majority decision to modify appellant Turner's sentence from five hundred (500) to four hundred (400) years.

The majority properly concludes the trial court gave an erroneous enhancement of punishment instruction as to appellant Turner and that this error was of a fundamental nature. Despite the error, the majority reasons the "recommended sentence speaks for itself that the jury was not influenced by the minimum sentence authorized." (Maj. at 1159). This analysis simply does not survive a close reading of *Ellis v. State*, 749 P.2d 114 (Okl.Cr.1988).

In *Ellis*, the jury was likewise improperly instructed that the defendant's maximum punishment was twenty (20) years in accordance with 21 O.S.1981, § 51(B). We concluded, however, that the applicable statute was 21 O.S.Supp.1982, § 801, which provides for a ten (10) year minimum sentence. Accordingly, this Court modified defendant Ellis' sentence from sixty (60) years to ten (10) years imprisonment. The analysis proposed by the majority in the instant case was equally available in *Ellis*. However, I conclude that such reasoning was implicitly rejected therein when we stated:

> "Since it is impossible to determine what a jury would have done under a proper instruction, we are unable to affirm ... appellant's sentence." *Novey v. State*, 709 P.2d 696, 700 (Okl.Cr.1985). Thus, the failure of the trial court to properly instruct the jury regarding punishment pursuant to Section 801 *requires* this Court to modify the punishment imposed upon the appellant to the *minimum* allowed under Section 801.

*Ellis*, 749 P.2d at 116 (emphasis added).

It is unreasonable that the majority can conclude that error of a fundamental nature occurred, that *Ellis* is controlling in the instant case, and yet pretend that modifying appellant Turner's sentence to four hundred years will "correct" such an error. I would modify appellant Turner's sentence from five hundred (500) years to ten (10) years, as mandated by *Ellis*.