Michael Earl CASEY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–754.

Court of Criminal Appeals of Oklahoma.

Jan. 21, 1987.

Rehearing Denied March 10, 1987.

Rebecca L. Adams, Sand Springs, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Michael Earl Casey, was convicted in the District Court of Tulsa

County, Case No. CRF–83–4377, of Rape in the First Degree and Forcible Sodomy, for which he received sentences of seven and five years' imprisonment, respectively, and he appeals raising six assignments of error.

At about 3:25 a.m. on December 10, 1983, Officers Rudick and Middleton of the Tulsa Police Department were summoned to a residential area in southeast Tulsa where they observed an automobile parked at the side of the street. Upon approaching the vehicle Office Rudick observed the appellant sitting clothed in only an unbuttoned shirt, and the nude prosecutrix lying in the front seat with her face in his lap, apparently performing oral sex upon the appellant. Rudick ordered the two to get dressed and get out of the vehicle. Both exited the car immediately, the prosecutrix stating, "I've been raped," and the appellant replying "I can't believe this is happening.... I've known her for over a year, she's done this to me before." Rudick observed a large red mark on her hip. After both put their clothing on, Officer Rudick took the appellant to his patrol car and Officer Middleton took the prosecutrix to his. Rudick explained to the appellant that they had received calls that naked people were running around a car in the area, and that the car had been running for some time. The appellant stated that they had never been out of the car and that he had been taking the prosecutrix home when they became sexually active, and so pulled over to "have sex." After questioning him briefly he stated that all of the acts were consensual. After Rudick consulted with Officer Middleton, he determined that the prosecutrix had told a quite different story, and checking for corroborative evidence, he found dried grass on the car seat and the floorboard, blood stains on the car seat, a Great Escape Club card in the adjacent yard, and an area in the yard near a tree where the grass appeared to be pressed down by an object of weight. The appellant was unable to give the officers the name of the prosecutrix and so he was arrested.

The prosecutrix testified that she had been waiting in below freezing weather outside the Great Escape Club, after it had closed at 2:00 a.m. for her sister to return. The appellant drove up and offered her a ride home, but instead of taking her home, he drove around with her. Appellant asked her if she ever wanted to see her child again. When he finally stopped the car, she ran to a house, knocked on the door and yelled for help. Appellant chased and caught her, dragged her to some shrubs and raped her for the first time. He then placed her back in the car, raped and sodomized her.

A resident of the neighborhood testified that he observed the appellant, who had the prosecutrix by the arms, pushing her into a car, and that the appellant was clothed only in a shirt. Another resident testified she had heard someone "scream, 'No,'" and after her husband investigated and observed the car, he called the police.

The appellant testified that he had observed the prosecutrix standing outside the Great Escape Club and decided to give her a ride home. When she got in she was too intoxicated to tell him an address and so he drove around trying to decide what to do. He finally stopped the car. After some discussion they became aroused and while removing their clothes she suddenly decided to get out of the car. As she was only partially clothed, he got out to help her back into the car. He further testified that they never had intercourse.

Medical testimony revealed that a vaginal swab had enzymes and antigens which were indicative of seminal fluid. Lab tests revealed that seminal fluid was found on the blouse of the prosecutrix, and semen was found on the car seat. Samples of the appellant's blood and saliva revealed that he is blood group A and is a secreter which is consistent with the antigen A found on the vaginal swab, the blouse, and on the car seat. Testing of the prosecutrix indicated she does not secrete in other body fluids and therefore could not be responsible for the antigen found in the samples.

■ As his first assignment of error the appellant argues that the sodomy statute

was improperly applied to him. He urges that because the legislature changed the title of the statute to "Forcible Sodomy," and because sodomy at common law was restricted to anal copulation, *Berryman v. State,* 283 P.2d 558 (Okl.Cr.1955), that he was improperly charged and convicted of forced oral copulation. The applicable statute, 21 O.S.Supp.1984, § 888, provides:

> Any person who forces another person to engage in the detestable and abominable crime against nature, pursuant to Section 886 of this title, upon conviction, is guilty of a felony punishable by imprisonment in the penitentiary for a period of not more than twenty (20) years. This crime may also be known as forcible sodomy.

As the act prohibited is "the detestable and abominable crime against nature," and the statute refers to 21 O.S.1981, § 886, which uses the identical term and has been construed to include oral copulation, *see Clayton v. State,* 695 P.2d 3 (Okl.Cr.1985), we must conclude that the legislature intended this statute to be given the same construction. We note further that Section 888 provides that the prohibited act may also be known as forcible sodomy. Therefore, under Oklahoma law, forcible sodomy includes oral copulation as well as anal copulation. This assignment of error is meritless.

■ The appellant next contends that 21 O.S.Supp.1984, § 888 is unconstitutionally vague. This same issue was addressed in *Clayton,* in construing the term in 21 O.S. 1981, § 886 "detestable and abominable crime against nature," which we found was neither vague nor indefinite. *Clayton* 695 P.2d at 6. As the new statute contains the same term, the same reasoning applies. This assignment of error is without merit.

■ For his third assignment of error, the appellant alleges that he was interrogated in violation of his rights as set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). That case holds that a statement stemming from custodial interrogation of a defendant is not admissible by the prosecution unless the defendant was given certain specific warnings concerning his right to refuse to incriminate himself, and to an attorney. Custodial interrogation was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." The record reveals that Officer Rudick questioned the appellant in Rudick's patrol car and came to the conclusion that no crime had been committed because the sexual acts were consensual. However, after he spoke with Officer Middleton, who had questioned the prosecutrix, he asked the appellant the name of the prosecutrix which he was unable to give. At that point Officer Rudick placed the appellant under arrest and advised him of his rights. As the appellant was not under formal arrest during the initial questioning, the issue is whether or not he was "deprived of his freedom of action in any significant way." Police officers are not required to administer *Miranda* warnings to everyone whom they question, nor is the requirement of warnings to be imposed simply because the person being questioned is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The ultimate inquiry is simply whether there is a formal arrest or restraint on the individual's freedom of movement to the degree associated with a formal arrest. *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). In *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) the Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for purposes of the *Miranda* rule, reasoning that such a stop is more analogous to a *"Terry* stop," *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than to a formal arrest. The Court further stated that an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions, to which the detainee is not obliged to respond. The

court contrasted this situation to a station house interrogation which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek. Although the case before us is not a routine traffic stop, the situation is more analogous to a *Terry* stop than a formal arrest. We therefore find that the appellant's rights were not violated when Officer Rudick did not read him the *Miranda* warnings prior to the initial questioning.

The appellant next claims that the prosecution improperly introduced evidence of other crimes. The record reveals that the appellant testified that the prosecutrix had tried to encourage him to obtain some cocaine for her, and she asked if he used it. He stated in his testimony, during direct examination, "I said no, I do not do cocaine or any other type of drug." During cross-examination the prosecutor reminded him of his statement which he reaffirmed. She asked him if that meant he never had marijuana with him to use. He replied that was true. The prosecutor then asked if he had marijuana with him in his car that evening. He answered, "Not of my own, no." She then asked if he had some in his possession in his car in Siloam Springs, Arkansas. He stated that as a real estate agent he toured up to twenty-five people a day in his car and that when he had a traffic accident in Siloam Springs, a stem of a plant had been recovered. Appellant's objections were properly made, but we find that this assignment of error lacks merit. The rule is well settled that a party may not complain

of error which he himself has invited. Error, if any is shown, was clearly invited and not grounds for an error recognizable on appeal. *Goodrich v. State*, 553 P.2d 219 (Okl.Cr.1976).

As his fifth assignment of error, the appellant alleges improper comments of the prosecutor during closing argument. As only two of the alleged errors were properly preserved by the imposition of timely objections, we will address those alone. *See Tucker v. State*, 620 P.2d 1314 (Okl.Cr. 1980). In the first instance he argued that the evidence was mischaracterized,[1] and in the second instance, he argued that there was no evidence to support the prosecutor's argument.[2] The judge overruled the first objection stating, "I'll leave it for the jury to determine whether it is or whether it isn't, I've told them before any statement you or Ms. Creekmore make is not evidence." He overruled the second objection without comment. We have stated before, that the right of argument contemplates a liberal freedom of speech, and a wide range of discussion, illustration, and argumentation. *McDonald v. State*, 553 P.2d 171 (Okl.Cr.1976). Considering the great weight of the evidence and the relatively light sentences imposed, we cannot find that the comments, if error, determined the verdict or resulted in an excessive sentence. *See Ford v. State*, 532 P.2d 89 (Okl.Cr.1975). Therefore this assignment of error is meritless.

For his last assignment of error, the appellant alleges that the evidence was in-

1. The record reads in pertinent part as follows: [W]hat does Officer Rudick see? He sees the Defendant, one arm draped over the back of the seat, one arm holding [prosecutrix'] face in his groin committing oral sodomy. (Tr. 278).

2. The transcript reads in pertinent part as follows:
When he asks the individuals to get their clothes on and get out of the car the first thing [prosecutrix] says is that she's been raped, first thing the Defendant says is huh, can't believe she's doing this to me again. I've know[n] her for a year and a half, her name

is Beth. Maybe this is the same story he's told the other times he's been in this situation. MR. BREWSTER: Your Honor, to which I'll object as highly improper. There's no evidence whatsoever of that and that's a harpoon that I think is uncalled for. I'd move that the jury be admonished.
THE COURT: Objection will be overruled.
MS. CREEKMORE: Ladies and gentlemen, he's told you he's been in this situation before and he's told a story to the police before and that's the thing to do, that's the way to get out of these embarrassing situations. Verification again of what [prosecutrix] told you is exactly what was going on. (Tr. 279).

sufficient to support the convictions. The test for sufficiency of the evidence is stated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), where the Supreme Court of the United States held that a reviewing court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." We are of the opinion that the evidence was more than sufficient under this test to support the verdict, and therefore find this assignment of error also to be meritless.

The judgments and sentences are AFFIRMED.

BRETT, P.J., and PARKS, J., concur.