Joseph CRAWFORD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–89–39.

Court of Criminal Appeals of Oklahoma.

Oct. 1, 1992.

Rehearing Denied Nov. 9, 1992.

William H. Luker, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice Presiding Judge:

Appellant Joseph Crawford was tried by jury and convicted of Murder in the First Degree (21 O.S.Supp.1982, § 701.7); First Degree Burglary, After Former Conviction of a Felony (21 O.S.1981, § 1431); Robbery by Force, After Former Conviction of a Felony (21 O.S.1981, § 791); and Larceny of an Automobile, After Former Conviction of a Felony (21 O.S.1981, § 1720), Case No. CRF-88-41, in the District Court of Creek County. The jury found the existence of one aggravating circumstance and recommended punishment of death for the murder conviction and imprisonment for ninety-nine (99) years for the burglary conviction; forty-five (45) years for the robbery conviction and twenty (20) years for the larceny of an automobile conviction. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.

Eighty (80) year old Nattie Jo Price was discovered missing from her Bristow, Oklahoma home on Saturday morning, February 20, 1988. The chief of the Bristow Police Department received a phone call Tuesday morning, February 23, 1988, concerning the Appellant's possible involvement in the disappearance of Ms. Price. Appellant was located later that day in Sapulpa. When questioned by agents of the Oklahoma State Bureau of Investigation (OSBI), Appellant confessed to breaking into Ms. Price's home on Friday night, February 19, 1988, and to stealing her television set and her car. He told the agents that he kidnapped Ms. Price, placing her in the trunk of the car. He said that he took Ms. Price to a shed behind a house in Sapulpa and left her there. He insisted that she was alive when he left her.

Following Appellant's directions, the agents found Ms. Price, dressed only in her

nightgown, inside the shed. Testimony from the medical examiner revealed that she had been dead for at least twelve (12) hours prior to being found and within four to six hours of her last meal, and that she had numerous wounds covering her body. The cause of death was determined to have been manual strangulation and blunt injuries to the head.

## I.  ISSUES RELATING TO THE GUILT– INNOCENCE STAGE OF TRIAL

■ In Appellant's third assignment of error, he contends that the evidence of first degree murder was insufficient to support a guilty verdict. Appellant was charged with malice aforethought murder and, in the alternative, felony-murder. We have previously held "where an information charges first degree malice aforethought murder, a conviction may be had for felony-murder if supported by the evidence" regardless of the fact the charges were not pled in the alternative. *Munson v. State,* 758 P.2d 324, 332 (Okl.Cr.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989). Because the proof presented at trial in support of the felony-murder charge consisted of both direct and circumstantial evidence, we will review the sufficiency of the evidence under the standard set forth in *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985); whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the essential elements of the crime beyond a reasonable doubt: *Moore v. State,* 788 P.2d 387, 400 (Okl.Cr.1990).

■ A conviction for felony-murder requires that the accused must have committed murder while in the commission of one of the enumerated felonies found in 21 O.S.Supp.1982, § 701.7(B). In this case, the information alleged that the murder was committed during the course of a first degree burglary. Appellant confessed to breaking into the decedent's home during the nighttime with the intent to steal her car.

This is supported by evidence found at the decedent's home; the hook to the out-side screen door was missing, the wooden door into the house was splintered and the lock found across the room. A dresser in the decedent's bedroom had been ransacked with items strewn on the floor. A lamp in the living room had been knocked over and the television was missing.

Appellant also admitted that, once inside the house, he demanded that Ms. Price give him the keys to her car. He then removed Ms. Price from the house and transported her to the shed where she was found. Testimony from the medical examiner established that Ms. Price had been severely beaten and manually strangled prior to being placed in the shed.

■ We find this evidence sufficient for a rational trier of fact to find beyond a reasonable doubt that the decedent had been killed during the commission of the burglary. Therefore, as the jury's verdict does not specify whether Appellant was found guilty of malice-aforethought murder or burglary-murder or robbery-murder, the verdict must be interpreted as one of felony-murder in order that Appellant receive the benefit of the rule that a defendant cannot be convicted of felony-murder and the underlying felony. *Munson,* 758 P.2d at 332.

■ In his sixth assignment of error Appellant contends that his compelled attendance at trial in jail coveralls bearing the words "Bristow Jail" on the back denied him a fair trial. Defense counsel did not bring the Appellant's clothing to the attention of the trial court until after voir dire had commenced. Counsel again objected after voir dire was completed and requested a dismissal of the case. Appellant's motion was overruled on the grounds that a dismissal was warranted only if Appellant was before the jury in handcuffs.

■ It is error to compel an accused to appear before a jury in prison clothing where a timely request has been made for civilian clothing. *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Compelling an accused to attend his trial in a prison uniform seriously erodes the presumption of innocence that

all accused persons are entitled to. *Collins v. State,* 70 Okl.Cr. 340, 106 P.2d 273, 279 (1940).

In *Watt v. Page,* 452 F.2d 1174 (10th Cir.1972), *cert. denied* 405 U.S. 1070, 92 S.Ct. 1520, 31 L.Ed.2d 803 (1972), the Tenth Circuit Court of Appeals held that, despite the absence of a timely objection, a conviction need not be reversed if the error was harmless beyond a reasonable doubt, considering the fact of overwhelming evidence. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *See also Rhinehart v. State,* 609 P.2d 781, 783 (Okl.Cr.1980).

■ Although Appellant's objection was not timely, in light of his repeated objections, we do not feel that this lack of timeliness is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. *Estelle v. Williams,* 425 U.S. 501, 513, 96 S.Ct. 1691, 1696, 48 L.Ed.2d 126, 135. However, based on the rule in *Watt* we cannot say that this conviction requires reversal. As previously discussed, the overwhelming evidence supports the finding of guilt and therefore we find the jail attire had little, if any, effect upon the verdict.

■ Contrary to Appellant's contentions, we do not find that Appellant's clothing made the sentencing stage of trial too unreliable to meet the heightened standard of reliability imposed by the eighth amendment of the federal constitution and Article II, § 9, of the State constitution. Appellant testified during the second stage of trial. He identified his family, admitted to prior felony convictions for burglary and escape and emphasized the fact that he had never hurt anyone. In light of this evidence, Appellant's presence in jail coveralls was harmless beyond a reasonable doubt.

Based upon the particular facts of this case, including Appellant's confession to all offenses save the murder, his leading of the police to the location of the body and the remaining evidence as discussed above, we find that Appellant's clothing did not contribute to the jury's verdict and Appellant is therefore not entitled to a reversal of his conviction nor modification of his sentence. This assignment of error is denied.

■ In his seventh assignment of error, Appellant contends the trial court erred when it refused to allow the defense to introduce the audio tape of Appellant's conversation with girlfriend, Carol Welch. Again, we find merit to Appellant's argument but do not conclude that reversal is warranted.

The tape in question resulted when Ms. Welch was wired by OSBI agents and sent into the apartment where the Appellant had been located, prior to his questioning by police. During the conversation, Appellant denied any knowledge of Ms. Price or her disappearance. Over an objection by defense counsel, the trial court denied admission of the tape into evidence ruling that portions of it were inaudible, that there was no identification of the speaker at the beginning of the tape, that the defendant's statements were merely self-serving declarations, and that playing the tape for the jury was an "attempt to put on part of the defense case without producing witnesses live,...." (Tr. 527–528)

■ Exculpatory statements which are made in the same conversation or on the same occasion as a confession or damaging admission are admissible to explain the circumstances of the confession. *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Wells v. State,* 559 P.2d 445 (Okl.Cr.1977). In *Wells,* a prosecution for robbery with firearms, testimony from the police officer who interrogated the defendant relating that at the time of the interrogation he told the defendant that an accomplice had admitted the armed robbery was held admissible as it tended to establish circumstances surrounding the defendant's oral confession. *Cf. Williams v. State,* 542 P.2d 554 (Okl.Cr.1975), *modified on other grounds* 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976) (tape made two days prior to the defendant's confession was too remote from the confession).

In the present case, Appellant was taken to the police station for questioning shortly after the conversation with Ms. Welch and his confession was given within the next 24 hours. Only a small portion of the tape is inaudible. Although the initial speaker, setting forth the time and date of the tape, is not identified, Ms. Welch and Appellant are sufficiently identified to render the tape authentic and to provide an adequate guarantee of trustworthiness. *See* 12 O.S.1981, § 2901(B)(4).

We find the conversation with Ms. Welch sufficiently related to the confession so that the tape should have been submitted to the jury for whatever weight and credibility they would give it, under proper instructions. While we find the exclusion of the tape error, we do not find this requires reversal of the conviction as "it is not error alone that requires the reversal of judgment of conviction, but error plus injury, and the burden is on the Appellant to establish the fact that he was prejudiced in his substantial rights by the commission of error." *Harrall v. State*, 674 P.2d 581, 583 (Okl.Cr.1984). *See also Crane*, 476 U.S. at 690, 106 S.Ct. at 2147 (this type of error is subject to harmless error analysis).

Appellant was not denied the ability at trial to subject the State's case to the requisite adversarial testing. On appeal, he has failed to show that in light of the strong evidence of guilt, that admission of the excluded, admittedly self-serving, statement would have yielded a different result at trial. Accordingly, this assignment of error is denied.

In his eighth assignment of error, Appellant alleges that the trial court erred by admitting his statements made to the police when the circumstances surrounding the giving of the statement do not show that he knowingly and voluntarily waived his right to silence and his right to be represented by counsel.

At trial and now on appeal, Appellant presents several issues for consideration. Initially, he contends that his transportation from the apartment to the police station by the OSBI agents was the equivalent of custodial interrogation and that he should have been given the *Miranda* warning when he was initially transported, even though questioning did not take place at that time. Secondly, he argues that the totality of the circumstances surrounding the giving of the statement were so coercive as to render the statement involuntary.

The record reflects that OSBI agents Pat Kennedy and Jim Otte met Appellant at an apartment in Sapulpa, identified themselves and asked him to accompany them to the police station for an interview. Appellant was told by Agent Kennedy that he was not under arrest. Appellant agreed to accompany the officers and followed them to their car. Appellant was again told that he was not under arrest. Once in the car and on the way to the station, Appellant was again informed that he was not under arrest. No further conversation occurred in the car.

At the police station, shortly before 6:00 p.m., Appellant was left in an interview room while the agents located the officers in charge of the investigation. OSBI Agent David Page, accompanied by Bristow Police Officer Wayne Davis, asked Appellant a few preliminary questions, i.e. name, date of birth and then presented Appellant with a written form explaining his rights and the waiver of those rights. Appellant was asked to read the form, then Agent Page asked him if he understood the form and if he wished to speak with the officers. Appellant indicated that he understood it, would talk with the officers and signed the waiver of rights form. He confessed to the burglary, robbery and larceny of the automobile. The officers read the *Miranda* warning a second time and Appellant's confession was tape recorded.

Appellant was not formally placed under arrest until his arrival at the police station, therefore the issue is at what point he was "deprived of his freedom of action in any significant way." Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way". *Miranda v. Arizona*, 384

U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

■ Police officers are not required to administer *Miranda* warnings to everyone they question, nor is the requirement of warnings to be imposed simply because the person being questioned is the one whom the police suspect. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The ultimate inquiry is simply whether there is a formal arrest or restraint on the individual's freedom of movement to the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). *See also Casey v. State*, 732 P.2d 885, 887 (Okl.Cr.1987).

■ Under the evidence presented in this case, we find that Appellant voluntarily accompanied the OSBI agents and was not deprived of his freedom in any significant way. Appellant was informed three separate times that he was not under arrest and the agents testified that if Appellant had refused to accompany them or refused to cooperate in any way, they would have left the premises without him. Additionally, the officers did not ask Appellant any questions until after arriving at the police station. We find this transportation of Appellant was not equivalent to custodial interrogation, and therefore the *Miranda* warnings which were given were sufficient to guarantee that constitutional safeguards were met.

■ With regard to the confession, it is well established that the ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). To determine whether the maker's will was overborne, the court must look to the totality of the surrounding circumstances, both the characteristics of the accused and the details of the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Young v. State*, 670 P.2d 591, 594 (Okl.Cr.1983).

■ When the admissibility of a statement or confession is challenged, the burden is on the State to show, by a preponderance of the evidence, that it was voluntary. *Young v. State*, 670 P.2d 591, 594 (Okl.Cr.1983), citing *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). *See also Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 485 (1986). A signed waiver of rights is in itself strong evidence of the voluntariness of the Appellant's statement. *See Smith v. State*, 674 P.2d 569, 572 (Okl. Cr.1984).

■ Appellant contends that although he was given the waiver to read, the State failed to prove that he actually read and understood it. Appellant offers no proof that he was unable to read or understand the form or that he was of extremely low intelligence or understanding. The record shows that he had completed the 10th grade in school, and although that level of education does not ensure that he was able to read, Appellant offers nothing to prove the contrary.

We have fully reviewed the record and agree with the trial court that the statement was not coerced. The record is devoid of any inducements offered to the Appellant in exchange for his confession. *See Crawford v. State*, 688 P.2d 347, 349 (Okl.Cr.1984). This Court has held on numerous occasions that when evidence taken in-camera is sufficient to support the trial court's ruling that the defendant's statement was voluntarily made and thus admissable, that ruling will not be disturbed on appeal. *McAdams v. State*, 763 P.2d 391, 393 (Okl.Cr.1988); *Rosteck v. State*, 749 P.2d 556, 558 (Okl.Cr.1988). Accordingly, this assignment of error is denied.

■ In his ninth assignment of error, Appellant contends that he was denied a fair trial by the introduction of photographs of the victim which were gruesome and repetitive. It is well settled that the admissibility of photographs is a matter within the trial court's discretion. Absent an abuse of that discretion, this Court will not reverse the trial court's ruling. *Nuckols v. State*, 690 P.2d 463, 470 (Okl.Cr.

1984), *cert denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

We have examined the photographs and find them to be admissible. Their content is relevant and the probative value substantially outweighs any prejudicial effect. *Smith v. State,* 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert denied,* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Oxendine v. State,* 335 P.2d 940, 942 (Okl. Cr.1958). The photos in the present case, twenty (20) 8 × 10 inch color photographs, accurately depicted the victim as found by the police officers and the nature and extent of her wounds.

Appellant further argues that a color slide offered by the State is not relevant because there was no dispute as to the identity of the victim and the cause of her death. This argument was rejected in *Nguyen v. State,* 769 P.2d 167 (Okl.Cr. 1988). Relying on *Newbury v. State,* 695 P.2d 531, 534 (Okl.Cr.1985), we stated that in every criminal prosecution, it devolves upon the State to prove, first, the *corpus delicti,* and second, that the crime was committed by the accused. Pictures of the murder victim are always probative in establishing the *corpus delicti* of the crime. *Id.* at 171. Accordingly, the trial court did not abuse its discretion in admitting the exhibits. Therefore, this assignment of error is denied.

In his eleventh assignment of error Appellant contends that the testimony of OSBI forensic chemist Mary Long concerning hair evidence was scientifically unreliable for several reasons.

Initially, Appellant claims that Ms. Long boasted that hair comparison evidence was conclusive identification. To the contrary, the record reflects that Ms. Long properly testified that the limitations of hair analysis allowed her to testify only that two hairs were "microscopically consistent". She could not state, beyond a reasonable doubt, that a certain hair belonged to a particular individual. (Tr. 485, 494, 496) We do not find her testimony to be an improper attempt to bolster the credibility of hair evidence.

Appellant also challenges the validity of the analysis employed in this case. He contends that the standard method, and the one employed in this case, involves "merely looking through a comparison microscope at two hairs to determine whether the analyst believes the two hairs are consistent". We find this to be an over-simplification of the process testified to by Ms. Long.

Ms. Long testified in great detail to the procedures used in analyzing the hair evidence. We have no evidence that she failed to follow the procedures accepted by the scientific community. Appellant's complaints that the procedures do not ensure accurate results are better addressed to the scientific community. Appellant has failed to present us with sufficient reason to find that Ms. Long's testimony and test results were improperly admitted. Further, we reject Appellant's offer to reconsider the admissibility of microscopic hair comparison evidence. *See Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983).

Appellant further asserts that the reliability and relevancy of the hair evidence in this case is questionable because the hairs that Ms. Long claimed were consistent with Appellant's were never produced in court.

Appellant relies on *Fuller v. Lemmons,* 434 P.2d 145 (Okl.1967), and *Simon v. Hendricks,* 330 P.2d 186 (Okl.1958), to support his argument that failure to introduce the physical evidence is error. These two cases from the Oklahoma Supreme Court were concerned with the testimony of a medical expert. The Court stated that a medical expert must always predicate his opinion on certain premises of fact; however, the opinion of the medical expert, based on an X-ray, was found not to be admissible until the X-ray had been admitted into evidence. We do not find these cases helpful to the present situation. The State has failed to address this issue.

The disclosure of the facts or data underlying an expert's opinion is addressed in 12 O.S.1981, § 2705. This section specifically provides:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may be required to disclose the underlying facts or data on cross-examination.

This section does not require the direct examiner to bring out the underlying data upon which the expert's opinion is based. However, if that data is not brought out on direct examination and if that data would assist the trier of fact, it may be brought out on cross-examination.

Here, the primary support for Ms. Long's opinion would be the actual hair evidence found at the scene. This was not offered into evidence by the State. No objection was made by defense counsel to the absence of this evidence. No request was made by the Appellant prior to trial or during the direct or cross-examination testimony of Ms. Long to admit the hairs into evidence.

We find the omission of the hair evidence does not undermine the reliability or relevance of the hair comparison evidence. The purpose of disclosing the underlying facts is twofold: to test the credibility of the expert witness and to assist the trier of fact in determining the ultimate issue of the case. Here, the credibility of Ms. Long and hair evidence comparison in general was adequately tested during cross-examination. She was asked to specifically describe the characteristics of the hairs found at the scene and explain how they were consistent with those of Appellant.

Admitting the actual hair would be of doubtful assistance to the jury as the distinguishing qualities may or may not be discernable to the naked eye. Just as it is not mandated that the State must offer into evidence the actual blood sample used in typing the blood or the body upon which an autopsy has been performed, it is not a requirement that the actual hair analyzed be admitted.

Based upon the foregoing, we find no error in the admission of Ms. Long's testi-mony. She cautiously and correctly testified regarding her conclusions of the hair evidence in this case. The weight to be given this testimony is exclusively within the province of the jury. This assignment of error is therefore denied.

█ In his fifteenth assignment of error, Appellant contends that he was prejudiced by the participation of Mr. Joe Sam Vassar, one of the two prosecutors in the case. Prior to joining the office of the District Attorney, Mr. Vassar had represented Appellant in several criminal cases. The judgments and sentences from three of those prior felony cases were used in the second stage of trial to enhance Appellant's punishment for the non-capital offenses. Appellant argues that Mr. Vassar's participation in introducing those former convictions indicated to the jury that even his former lawyer had given up on him.

In support of his argument, Appellant relies on *Skelton v. State*, 672 P.2d 671 (Okl.Cr.1983), and *Howerton v. State*, 640 P.2d 566, 568 (Okl.Cr.1982). These cases prohibit an attorney from changing sides during a case, even with the consent of the accused, because such a situation "create[s] a pervasive atmosphere of impropriety which cannot be waived." We do not find this authority persuasive as there is no evidence that Mr. Vassar changed sides during the pendency of this case.

█ In *Thoreson v. State*, 69 Okl.Cr. 128, 100 P.2d 896, 899 (1940), we stated that "an attorney cannot be permitted to assist in the prosecution of a criminal case if, by reason of his professional relations with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith." Disqualification is to be determined on the individual facts of each case. *Id.* at 900.

An examination of the record herein reveals no facts which warrant the disqualification of Mr. Vassar from the prosecution of this case. His conduct was neither improper under the laws of this State nor the Code of Professional Conduct.[1] Contrary

1. Rule 1.11, Rules of Professional Conduct pro-      vides in part:

to Appellant's argument, the inquiry by Mr. Vassar during second stage cross-examination which led Appellant to admit that his prior convictions were for "breaking into buildings or residences owned by other people" was not an improper use of privileged information. Therefore, this assignment of error is denied.

▇ The next series of allegations relate to first stage jury instructions. Appellant contends that the trial court erred in failing to instruct the jury on the defense of intoxication and the lesser included offenses of second degree murder and first degree diminished capacity manslaughter. Specifically, Appellant argues that his consumption of alcohol, marijuana and PCP the day of the murder left him so intoxicated that he was unable to form the specific intent to commit malice aforethought murder.

▇ Appellant admits that he did not request any instructions on these issues at trial. However, the trial court has the duty to correctly instruct the jury on the salient features of the law raised by the evidence without a request by the defense. *Atterberry v. State*, 731 P.2d 420, 422 (Okl. Cr.1986), citing to *Wing v. State*, 280 P.2d 740, 747 (Okl.Cr.1955). Thus we must review for fundamental error.

▇ By statute, voluntary intoxication is not a defense to criminal culpability. 21 O.S.1981, § 153. However, we recognize an exception to this rule where the accused was so intoxicated that his mental abilities were totally overcome and it therefore became impossible for him to form criminal intent. *Norman v. State*, 648 P.2d 1243, 1244 (Okl.Cr.1982). If voluntary intoxication is to be relied upon as an affirmative defense, the defendant must introduce sufficient evidence to raise a reason-

able doubt as to his ability to form the requisite criminal intent. *Id.*

In the present case, the only evidence of Appellant's intoxication came from his own statement to the police that he "had been drinking and utilizing drugs from between 5:00 and 6:00 p.m. until about 10:30 p.m." (Tr. 380–381) This is contrasted with Appellant's detailed confession to the offenses. He described with particularity the conduct which lead him to the decedent's home and his actions inside the house. He described the nightgown Ms. Price was wearing and the phone in her bedroom. He gave officers very specific directions to the location of the shed where the decedent was eventually found.

We find that Appellant's detailed description of the burglary, robbery, larceny and surrounding circumstances demonstrates that he was in control of his mental faculties and not in the advanced state of intoxication he attempts to assert. *See Grace v. State*, 480 P.2d 285, 286 (Okl.Cr.1971); *Jolly v. State*, 508 P.2d 675 (Okl.Cr.1973). Accordingly, the trial court, in a proper exercise of its judicial duty, found insufficient evidence to warrant an instruction on the defense of intoxication and the lesser offenses of second degree murder and first degree diminished manslaughter. *See Mann v. State*, 749 P.2d 1151, 1156 (Okl.Cr. 1988); *Irvin v. State*, 617 P.2d 588, 596 (Okl.Cr.1980).

▇ Further, we find no error in the giving of jury instruction No. 31 [2]. Upon making the legal determination that the evidence was insufficient to support an instruction on the defense of intoxication, it was within the discretion of the trial court to merely reject an instruction on the alleged defense or to reject the instruction and advise the jury that pertinent state law

(c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not: (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter.

2. First stage Instruction No. 31 provided:

You are instructed that the laws of the State of Oklahoma provide in pertinent part: 'No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such a condition.' (O.R. 190).

provides that intoxication is not a defense to guilt.

Appellant also objects to the verdict forms provided to the jury in the first stage. He contends that the instructions and verdict forms pertaining to the murder, charged as Count I, malice aforethought murder and Count II, felony-murder, amounted to a directed verdict of guilt. Appellant argues that the instructions and verdict forms for murder did not give the jury the option of finding guilt based upon malice aforethought murder only or felony-murder only since they were supplied with one verdict form finding Appellant guilty of first degree murder, Counts 1 and 2, and one verdict form finding Appellant not guilty of first degree murder, Counts 1 and 2.

Appellant asserts that the intent of 22 O.S.1981, § 404, permitting the pleading of a criminal offense in alternative counts, is to give the jury the option of selecting between two or more alternatives when the acts charged could constitute more than one offense and that an interpretation of the statute which requires the jury to find all or none of the alternatives will defeat the purpose of this section.

Title 22 O.S.1981, § 404, provides in pertinent part:

> The indictment or information must charge but one offense, but **where the same acts may constitute different offenses,** or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, and the court or jury trying the cause may find all or either of the persons guilty of either of the offenses charged, and the same offense may be set forth in different forms or degrees under different counts; **and where the offense may be committed by the use of different means, the means may be pled in the alternative in the same count.** (Emphasis added)

In the present case, the conduct of Appellant which resulted in the death of the decedent constituted one offense, murder. That this act could be established in either of two ways did not charge two offenses. Therefore, instead of looking to the first portion of the section 404 as Appellant suggests, our focus is on the last phrase of the section, "... where the offense may be committed by use of different means, the means may be plead in the alternative in the same Count". When alternative theories of murder are supported by the evidence, this Court has specifically upheld the pleading of alternative theories of murder against a defendant. *See Plunkett v. State,* 719 P.2d 834 (Okl.Cr.1986).

Generally, however, these alternative theories as to the commission of the same offense are plead in a single count. Here, pleading of the alternative theories of murder in two separate counts was error but it does not require a reversal of the first degree murder conviction. The instructions given to the jury, including an almost verbatim recital of the statutory elements of malice forethought murder and felony murder, informed the jury that a finding of guilt of first degree murder could be returned only upon a finding that the State had proved, beyond a reasonable doubt, all of the elements of *both* counts 1 and 2. These instructions effectively placed a higher burden on the State to prove both theories of murder than if the jury had been properly instructed to choose between the alternative theories.

Appellant's argument that it was error to deny the jury the opportunity of rejecting one theory of murder in favor of the other intimates that one theory of murder is somehow a greater offense than the other. This is incorrect. Both malice aforethought murder and felony-murder are merely subsections of first degree murder and are subject to the same punishment. 21 O.S.Supp.1982, §§ 701.7 and 701.9.

Further, contrary to Appellant's arguments, the instructions did not direct a verdict of guilt for murder. The above discussed instructions effectively told the jury that if they did not find sufficient evidence of murder, they could consider the

lesser offense of first degree manslaughter.

■■■■ Appellant also contends that he was denied a unanimous verdict. Our constitutional guarantee of a unanimous verdict does not require the jury to indicate the factual basis upon which the finding of guilt was made. *James v. State*, 637 P.2d 862 (Okl.Cr.1981); *See also Newsted v. State*, 720 P.2d 734, 737 (Okl.Cr.1986); *Phillips v. State*, 641 P.2d 556, 559 (Okl.Cr. 1982). Here, there is a single crime charged, that of first degree murder. Whether or not it was committed with malice aforethought, or during the commission of a felony goes to the factual basis of the crime. The jury verdict was unanimous that the Appellant committed the crime. Such a verdict satisfies due process. *Plunkett v. State*, 719 P.2d 834, 841 (Okl. Cr.1986).

Next, Appellant argues that the absence of a specific finding of Appellant's intent to kill violates the eight amendment distinction between intentional murder and unintentional murder as recognized by the United States Supreme Court in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), and *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We considered this issue in *Hatch v. State*, 662 P.2d 1377 (Okl.Cr. 1983), wherein we reviewed and approved the rationale and policy of the felony-murder statute. We stated that we did not read *Enmund* to be an absolute ban on the imposition of the death penalty on one who is convicted of first degree murder through the felony murder doctrine. *See also Brogie v. State*, 695 P.2d 538 (Okl.Cr.1985), on post-conviction 760 P.2d 1316 (Okl.Cr.1988), (modified on other grounds.) Appellant has not persuaded us to change our views, especially in light of the fact that Appellant acted alone in the commission of this offense.

In a related proposition of error, Appellant alleges that his conviction for burglary must be vacated, as that charge served as the underlying felony for Appellant's conviction of felony-murder. While the jury's verdict does not specify whether Appellant was found guilty of malice aforethought murder or felony-murder, as discussed previously, "the verdict must be interpreted as one of felony murder in order that Appellant receive the benefit of the rule that the defendant cannot be convicted of felony-murder and the underlying felony." *Munson v. State*, 758 P.2d 324, 332 (Okl.Cr. 1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989). *See also Williams v. State*, 807 P.2d 271, 273 (Okl. Cr.1991); *Perry v. State*, 764 P.2d 892, 989 (Okl.Cr.1988). Therefore, as the felony-murder was alleged to have occurred during the commission of the burglary, the conviction for burglary must be reversed and vacated.

## II. ISSUES RELATING TO SENTENCING STAGE OF TRIAL

■■■■ In his fifth assignment of error Appellant contends that the evidence was insufficient to support a finding of the sole aggravating circumstance of "especially heinous, atrocious or cruel". The evidence supporting a finding that the murder was especially heinous, atrocious or cruel requires proof that the death was preceded by torture or serious physical abuse. *Stouffer v. State*, 742 P.2d 562, 563 (Okl. Cr.1987) (Opinion on Rehearing), *cert denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). *See also Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989); *Fowler v. State*, 779 P.2d 580, 588 (Okl.Cr.1989); *Foster v. State*, 779 P.2d 591 (Okl.Cr.1989); *Rojem v. State*, 753 P.2d 359, 369 (Okl. 1988). After a thorough review of the evidence, we agree with Appellant that the evidence does not support this particular aggravating circumstance.

Dr. M.F. Merchant, a forensic pathologist who conducted the autopsy on the decedent, testified that the cause of death was blunt force to the head and manual strangulation. Contusions and fractures about the decedent's face and head were inflicted in rapid succession and were the result of the blunt force. However, it was not possible to determine which occurred first, the blunt force injuries or the strangulation.

He further noted that abrasions found on the left hand and the feet were post-mortem, after death injuries received as a result of the body being dragged.

Dr. Merchant could not give an exact time of death but could only opine that the decedent had been dead at least twelve (12) hours by the time she was found in the shed and approximately four (4) to six (6) hours after her last meal. No testimony was elicited by either the State or the defense as to the level of suffering by the decedent or the time of losing consciousness, nor was any testimony given concerning whether the decedent was dead or alive at the time she was placed into the trunk of the car. While other evidence presented at trial showed that a struggle occurred on the decedent's bed, no evidence was presented to show that the decedent did not die instantly as a result of the strangulation.

We find that the record fails to present a sufficient evidentiary basis upon which a reasonable trier of fact and this Court could find the requisite torture or serious physical abuse to support the especially heinous, atrocious, or cruel aggravating circumstance. See 21 O.S.1981, §§ 701.11, 701.12(4). A record so bereft of evidence leads only to speculation and not to the rational drawing of reasonable inferences. While we are appalled by the facts relating to this murder, we cannot affirm a death sentence based solely on the especially heinous, atrocious or cruel aggravating circumstance when the evidence does not provide a basis upon which torture or serious physical abuse can be inferred. Accordingly, the jury's finding of this aggravating circumstance must fail.

When the sole aggravating circumstance falls because of insufficient evidence, this Court will set aside the death sentence and remand the case to the trial court for re-sentencing. 21 O.S.Supp.1985, § 701.13(E). The new sentencing proceeding shall be conducted pursuant to 21 O.S.Supp.1989, § 701.10a(1), with the trial court giving proper consideration to the possible alternative punishments of life imprisonment and life imprisonment without parole.

## III. PROSECUTORIAL MISCONDUCT

Appellant contends that he was denied a fair trial by improper tactics involving the introduction of the many photographs and by the remarks of the prosecutor. He argues that the State improperly invoked sympathy for the victim due to the nature of her injuries and that the State improperly characterized the crime as being a cold blooded murder for pecuniary gain. He claims the appeal for sympathy continued during the second stage closing argument when the extent of the victim's injuries were addressed and the jury was encouraged to review the photos. No objection was raised by defense counsel at trial to these alleged improper comments. Such a failure to object constitutes a waiver of error unless it is fundamental. *Ashinsky v. State*, 780 P.2d 201 (Okl.Cr.1989). Both remarks were reasonable comments upon the evidence, thus there is no reversible error. *Holt v. State*, 628 P.2d 1170 (Okl.Cr.1981).

Appellant also contends that the prosecution argued facts that were not in evidence. Appellant directs our attention to comments made during first stage closing argument that Appellant fainted when officers discovered the body, although no one had communicated to Appellant that the victim was dead. We do not find that this comment rises to the level of an intentional misstatement of facts or argument of facts not in evidence. The comment was based upon testimony from law enforcement officers at the scene and was well within the liberal range of discussion permitted during closing argument.

We have thoroughly reviewed the alleged improper comments and find no error warranting reversal. The comments, both singly and combined, were not improper, thus Appellant was not denied a fair trial. *See Smith v. State*, 737 P.2d 1206 (Okl.Cr. 1987), *cert. denied*, 108 U.S. 358, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant asserts next that he was denied effective assistance of counsel. It is

well established that an accused has a fundamental right to the reasonably effective assistance of counsel, regardless of whether counsel is appointed or retained. U.S. Const. amend. VI, XIV; Okla. Const. art. II, § 20. The standard for evaluating whether an accused received effective assistance of counsel was set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The two-part test requires first, that the defendant must show that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064. This same test applies to a capital case as well as a non-capital case. *Liles v. State,* 702 P.2d 1025, 1034 (Okl.1985).

In addition to this two pronged test, *Strickland* also provides that when a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. 466 U.S. at 696, 104 S.Ct. at 2070, 80 L.Ed.2d at 699. To establish prejudice, the Appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that undermines confidence in the outcome. *Kimmelman v. Morrison,* 477 U.S. 365, 380, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *Fisher v. State,* 736 P.2d 1003, 1011 (Okl.Cr.1987). This is where we will begin the review in the present case.

■■■ Appellant offers a litany of alleged errors by trial counsel, committed during both the first and the second stage of trial. As the case is being remanded for resentencing, it is necessary to address only counsel's conduct during the first stage of trial. Appellant specifically alleges that counsel failed to introduce expert testimony concerning the effects upon Appellant of the ingestion of alcohol, marijuana and PCP; the failure to request jury instructions on the defense of voluntary intoxi-

cation or lesser included offenses of second degree murder or first degree diminished capacity manslaughter; the failure to object to the instruction given on voluntary intoxication; the failure to object to the instruction given on heat of passion manslaughter; and the failure to object to the murder verdict forms.

The record provided to this Court includes an affidavit from trial counsel in which he attempts to explain his conduct at trial. The affidavit states in part that counsel was aware of Appellant's drug use the day of the homicide but did not believe it was an issue in the case. Counsel admits to being shown the jury instructions, but states that it never occurred to him to ask for an instruction on voluntary intoxication, second degree murder or to object to the instruction given on heat of passion manslaughter.

He further states that his strategy at trial was to persuade the jury that the victim was still alive when Appellant left her home and that Appellant was not the kind of violent person who could have deliberately killed Mrs. Price.

Counsel states that he has no recollection of seeing the verdict forms for the murder charge, but does admit that he did not ask to see them. He confesses that his contact with Appellant's family was not extensive. As a private practitioner, practicing mainly in the areas of domestic relations and property law, counsel states that he accepted this court appointment reluctantly and that his limited financial resources prevented him from doing extensive out-of-office investigation. Counsel admits to being told by Appellant about his time at the juvenile centers at Taft and Helena, but that he decided not to pursue the matter.

■■■ Admittedly, trial counsel is in the best position to explain his or her own trial conduct. However, we would advise counsel that affidavits of this sort will be reviewed with a critical eye. *Pierce v. State,* 786 P.2d 1255 (Okl.Cr.1990). By the very nature of appellate review, trial counsel's performance is reviewed several years after the fact. Three (3) years elapsed from the trial of this case to the prepara-

tion of counsel's affidavit. In reviewing counsel's performance, an appellate court must take every effort to eliminate the distorting effects of hindsight. So too should trial counsel be careful of subsequent reflection in preparing affidavits attesting to their prior performance.[3]

Initially we find that Appellant was not prejudiced by the absence of expert testimony regarding his drug use, or by the absence of jury instructions on that issue. As previously discussed, Appellant's detailed statement to the authorities concerning the offenses showed he was not so intoxicated as to be able to rely on it as a defense. Therefore, he was not harmed by the failure to introduce any expert testimony on intoxication. Without the evidence, instructions on voluntary intoxication were not necessary. Counsel's failure to object to the instructions and verdict forms and failure to request additional jury instructions did not effect the adversarial nature of the case as the instructions given properly stated the applicable law.

After a careful review of trial counsel's performance, in light of Appellant's allegations, we cannot say that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Appellant has failed to show that the guilty verdict was rendered unreliable by a breakdown in the adversary process caused by alleged deficiencies in counsel's conduct. Based on a review of the case at the time of trial, counsel's strategy was sound and his defense viable. Accordingly, we find that Appellant was not denied effective assistance of counsel and this assignment of error is denied.

## V. MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.-13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.1981, § 701.12. Having found that the evidence does not support the sole aggravating circumstance found by the jury, we have no alternative but to REMAND THE CASE FOR A NEW TRIAL ON SENTENCING. Accordingly, the judgment and sentences for Robbery by Force, After Former Conviction of a Felony, and Larceny of an Automobile, After Former Conviction of a Felony are AFFIRMED, the judgment and sentence for First Degree Burglary is REVERSED and REMANDED with instructions to DISMISS, and while the judgment of guilt of Murder, First Degree, is AFFIRMED, the sentence of death for Murder in the First Degree is REMANDED for RESENTENCING. Since the remand for resentencing is due to insufficiency of the evidence to support the aggravating circumstance, the sentencing options at resentencing are limited to imprisonment for life or life without parole.

LANE, P.J., and BRETT and JOHNSON, JJ., concur.

PARKS, J., dissents.

PARKS, Judge, dissenting:

Under the facts and circumstances of this case, it would have been proper for the trial court to omit any instruction on intoxication. However, once the trial judge decides that an instruction is warranted he has a duty to ensure that the instruction

---

**3.** In some instances, hindsight can bring perfect vision so that all is completely understood and explained so as to arrive at the desirous result. However, it can also lead to hazy vision wherein particulars are forgotten or what was once clear becomes incomprehensible. As we do not attempt to second guess trial strategy, neither should trial counsel attempt to second guess him or herself.

Counsel is also cautioned about admissions that he or she did not understand the legal significance of certain facts or particular legal issues in a case. While we appreciate the candor with which many of these affidavits are prepared, such a statement may be tantamount to an admission of legal malpractice. This is particularly true in light of the many resources available to attorneys across the state; resources which are readily available upon counsel's request for assistance.

given is a complete and accurate statement of law. In this case, the trial court's instruction (*see* Majority at 638 n. 2), was an incomplete instruction concerning intoxication. As the Majority recognizes, there is an exception to 21 O.S.1981, § 153, that applies "where the accused was so intoxicated that his mental abilities were totally overcome and it therefore became impossible for him to form criminal intent." (Majority at 638).

This Court considered an identical issue in *Williams v. State,* 513 P.2d 335 (Okl.Cr. 1973), and held that "[i]f the trial court in its discretion found under the evidence presented that an instruction on the intoxication should be submitted, then the instruction submitted should instruct the jury on all law pertaining to intoxication and homicide." *Id.* at 339. In *Williams,* we found that the failure to give a complete instruction on intoxication was reversible error. *Id. See also Stanley v. State,* 762 P.2d 946, 949 (Okl.Cr.1988) (when an instruction on intoxication is appropriate, it is reversible error not to instruct the jury that intoxication can negate specific intent to kill). Accordingly, I would reverse and remand for a new trial.